45 So.2d 62

BARBE et al. v. CITY OF LAKE CHARLES.

No. 39095.

Nov. 7, 1949.

On Rehearing Feb. 13, 1950.

Patin & Patin, Robert R. Stone, Lake Charles, John I. Fowler, Sulphur, for plaintiffs-appellants.

Selby & Hickman, James A. Leithead, Russell H. Van Norman, J. B. Holloman, Jr., Lake Charles, for defendant-appellee.

HAWTHORNE, Justice.

On November 8, 1946, the city council of the City of Lake Charles adopted Ordinance 701, Commission Series, providing for the enlargement of the corporate limits of that city under the provisions of Act No. 315 of 1946. Within the 30 days before the ordinance became effective under the act, four separate suits contesting the extension were filed by residents of that city or of the territory proposed to be annexed thereto. Pursuant to Section 7 of the act, the district judge ordered these suits consolidated and tried as one suit. After trial on the merits there was judgment in favor of the defendant, City of Lake Charles, and against all of the plaintiffs in each of the suits, rejecting their demands and decreeing the ordinance to be reasonable, valid, and enforcible and to become effective within the time provided in Act No. 315 of 1946. From this judgment a suspensive appeal was perfected.

The well written and well reasoned opinion of the trial judge contains a statement of facts concerning the history and growth of the City of Lake Charles. That city was created pursuant to the provisions of Act No. 79 of 1867, which defined the corporate limits of the city, but now operates under the provisions of Act No. 207 of 1912. These limits remained as originally fixed until extended by the city during the year 1899, and have remained unchanged since that time, a period of approximately 50 years, except for the annexation of an area of about four city blocks on the eastern edge of the corporate limits within the last few years. During all these years the corporate limits have comprised an area of approximately five square miles, including about one-half of the lake known as Lake Charles, located immediately west of, and adjoining, the business section of the city. Under the provisions of Ordinance 701 (the ordinance under attack) approximately 10 square miles of territory are to be added to the corporate limits, including the remaining one-half of the lake. Pursuant to the ordinance, the corporate limits are to be extended to include areas located to the northwest, the west, and the south of the existing city limits. The population within the corporate limits of the city has increased from 6680 in 1900 to 34,399 in 1945, and a reasonable estimate of the number of people who reside in the area which the city proposes to annex is 10,000. This increase in population is due to the establishment of a number of large industries, such as oil refineries and alkali works.

Appellants attack the validity of the ordinance on several grounds. The first is that "The certificate of the assessor of Calcasieu Parish annexed to the petition filed with the city council of the City of Lake Charles, and which forms the basis of Ordinance 701 Commission Series is fatally defective".

Section 2 of Act No. 315 of 1946 provides:

"No ordinance enlarging the boundaries of a municipality shall be valid unless prior to the adoption thereof a petition has been presented to the governing body of the municipality containing the written assent of 25% in number of the resident property owned [owners] in said territory as well as 25% in value of the property with [within] the area proposed to be included in the corporate limits according to the certificate of the Parish Assessor. The valuation shall be certified to by the assessor according to the assessment of each of the owners signing the petition. Where there has been a change of ownership since the last assessment of the property, the assessor is authorized and directed to certify the valuation of the present owner in accordance with the last assessment appearing on the rolls against any previous owner. In any case where the property of the present owner has not specifically been assessed the assessor is authorized and directed to estimate the assessed value of said property for the current year and to certify same as the value of the property. * * * "

The certificate filed with the city council with the petition for annexation reads as follows:

"State of Louisiana
"Parish of Calcasieu

"I, E. R. Henry, Assessor for the Parish of Calcasieu, State of Louisiana, certify that the values placed upon the property appearing opposite each name in the above and foregoing petition are the values as appear on the assessment rolls at the present date. In the case where the property of the present owner has not been specifically assessed, then I have estimated the value and set the value out opposite each name. From the information which I have in hand, the persons appearing in the above and foregoing petition represent 25% of the resident owners in number and 25% in value of the property within the area proposed to be included in the corporate limits of the City of Lake Charles.

"Witness my hand and seal at Lake Charles, Louisiana, this 4th day of October, 1946.
(Signed)        "E. R. Henry
                      "E. R. Henry, Tax Assessor"

Appellants in brief state that this certificate "lacks that degree of certainty which one expects to find" in such certificate. We are unable to perceive any uncertainty in the certificate itself, as it substantially tracks the language of the statute. If appellants mean that the certificate is uncertain for the reason that the assessor made it "From the information which I have in hand", we still see no uncertainty, since this phrase could refer only to the official information over which he, as assessor, has control. The mere fact that he subsequently testified under oath, over objection, in connection with this same certificate could not and did not make the certificate itself fatally defective as to its form.

Appellants also contend that "The petitions filed with the city council, and on which Ordinance 701 is based, do not contain the signatures of resident property owners owning twenty-five per cent in value of the total assessed value of all property within the area sought to be annexed".

As we interpret it, Section 2 of the statute, which we have previously quoted, means that the petition must meet two requirements: It must be signed (1) by 25 per cent *in number* of the resident property owners in the territory to be annexed, and (2) by persons owning 25 per cent *in value* of all the property within the area proposed to be included in the corporate limits.

For a valid ordinance of annexation to be enacted, both of these requirements must be met, and whether both requirements were met in the instant case presents for our determination only a question of fact. The trial judge in his reasons for judgment reviewed all of the evidence and testimony on this point adduced by both appellants and appellee, and concluded that the petition seeking annexation in the instant case met both tests. He said in regard to this evidence:

"A careful check of the records in the assessor's office was made by Mr. James A. Leithead, with the assistance of a stenographer. He spent four or five weeks in accumulating data relating to the number of resident property owners and the assessed value of the property in the area sought to be annexed. He prepared a complete list of the assessments of property within this area, showing the name of the person to whom each tract was assessed, the description of the property and its assessed value. He further indicated on this list the persons to whom homestead exemptions had been issued and those who had signed the petition. He also checked the records of the Register of Voters and in cases where he was not certain he made an actual check of the property to determine who were and were not resident property owners. From the figures which Mr. Leithead compiled as a result of this investigation it is apparent that the signers of the petition represented more than 25% in number of resident property owners and more than 25% in value of the property located in the area sought to be annexed. The Court was impressed with the thoroughness of Mr. Leithead's work in collecting this information."

After a careful reading of the record, we cannot say that he committed error in so holding.

Still another contention of appellants is that "The refusal of the district judge to allow evidence concerning the East Broad Street section was reversible error".

The East Broad Street Section, according to counsel's brief, is an area lying east of the present city limits of Lake Charles. Counsel sought to introduce evidence to establish that this area has been extensively developed both for residential and for com-

mercial purposes, but this evidence was objected to, and the objection sustained by the trial judge, on the ground that it was not material to the issues involved in the instant suits. Counsel argue that this evidence is material because it would establish that the ordinance is unreasonable since it excludes the Broad Street area and includes an area consisting of lands and property which are undeveloped, and that the exclusion of the East Broad Street area is discriminatory.

■ The only question here presented is the admissibility of the evidence, and we fully agree with the ruling of the trial judge sustaining the objection to its admissibility on the ground that it was not material. A valid ordinance enlarging the boundaries of the City of Lake Charles to include the East Broad Street section could be adopted by the city only after presentation of a petition signed by owners of property in that area in accordance with the provisions of the act. Whether the Broad Street area, located east of the present city limits of Lake Charles, should be annexed is a matter which must be initiated by the owners of property in that area, and the omission or inclusion of that area in the city limits has nothing whatsoever to do with the reasonableness of the inclusion of the area described in Ordinance 701, located principally to the south and west of the present city limits, nor would evidence of its omission establish that the ordinance under attack was discriminatory.

The case of Pyle et al. v. City of Shreveport, 215 La. 257, 40 So.2d 235, cited by appellants, has no application, for in that case we were dealing with two separate, distinct, and non-contiguous areas which the citizens were seeking to have annexed by separate petitions, each group seeking to have its own respective area annexed without reference to the other by merger of the two areas in one ordinance.

Appellants also contend that "The land description contained in Ordinance 701 is fatally defective".

■ Section 8 of Act No. 315 of 1946 provides that, when the boundaries of a municipality have been enlarged, the ordinance with reference thereto must define with certainty and precision the territory *which is proposed to be included in the corporate limits,* and the ordinance must also define the entire boundary as changed. Appellants' contention that the ordinance is invalid for the reason that the land description is defective is raised in a supplemental petition, in which they allege what they consider to be an error in the description. The trial judge in his written reasons for judgment has ably and fully answered this contention thus:

"As required by this act the ordinance, in Section 1, first defined with certainty and precision the territory which it is proposed to include in the corporate limits. *Plaintiffs urge no complaint as to the description set out in that portion of the ordinance.* In Section 2 of the ordinance, however, the

entire boundary as changed is set out as required by said act. A part of this description reads as follows:

" 'Thence, on up Contraband Bayou with its center line through Sections 13, 24 and 19 of Township 10 South, Range 8 West, to the West line of the Southeast Quarter of the Northeast Quarter of Section 19, Township 10 South, Range 8 West;'

"The technical error pointed out by plaintiffs is that Sections 13 and 24 are located in Township 10 South, Range 9 West, of the Louisiana Meridian, while Section 19 is the only section mentioned in that portion of the description which is located in Township 10 South, Range 8 West. It is argued that the description is not set out with 'certainty and precision' as required by Act 315 of 1946.

" * * * According to the testimony of Mr. Elmer Schutts, a qualified civil engineer, the above-quoted portion of the ordinance is a 'repeat or dual description'. The point where the line begins at the mouth of Contraband Bayou is set out with precision. The questioned portion of the description, therefore, being definitely tied in with a starting point leaves no possible misunderstanding as to the location of the proposed boundary line. The Court concluded, therefore, that the entire boundary as changed is sufficiently defined to meet all of the requirements set out in Act 315 of 1946." (Italics ours.)

As pointed out by the trial judge, plaintiffs in the lower court urged no complaint as to the description set out in Section I of the ordinance describing the area to be annexed. However, appellants in this court for the first time urge that Section I of the ordinance does not describe the area to be annexed with certainty and precision, and they specifically set out in their briefs in what respects the description in Section I is defective.

■ These specific objections to the description were not pleaded or urged in the lower court, no evidence was adduced with reference thereto, and the trial judge did not consider or pass upon them. We therefore cannot consider these objections.

Appellants also take the position that "Ordinance 701 Commission Series has been repealed by Ordinance 717 Commission Series of the City of Lake Charles".

Plaintiffs in two of the consolidated suits, after issue had been joined by the filing of the answers of the city, and on the day the case was fixed for trial on its merits, that is, on July 7, 1947, submitted to the court for filing their second supplemental and amended petition. The trial judge refused to permit the filing of this petition because he was of the opinion that it altered the substance of plaintiffs' demands in their original and first supplemental petitions.

■ In this second supplemental petition plaintiffs allege that Ordinance 701

was repealed and annulled by the provisions of Ordinance 717, Commission Series of the City of Lake Charles, passed on April 1, 1947. In plaintiffs' original and first supplemental petitions they took the position that Ordinance 701 was null and void in that there had not been a full compliance with the act which governs annexations and provides the means and method by which a municipality may annex additional territory to its corporate limits. In those petitions plaintiffs set forth in detail the alleged failures to follow the provisions of the act, and in the alternative they alleged that the proposed annexation was unreasonable, and that the ordinance should be vacated and the proposed extension denied. On the other hand, in their second supplemental and amended petition, which the trial judge refused to permit them to file, they took the position that Ordinance 717, Commission Series of the City of Lake Charles, had the effect of repealing and annulling the provisions of Ordinance 701. Under these circumstances it is evident that the second supplemental and amended petition altered the substance of plaintiffs' original demands, and the trial judge properly refused its filing under the provisions of Article 419 of the Code of Practice. That article provides that, after issue joined, the plaintiff may, with the leave of court, amend the original petition, provided that the amendment does not alter the substance of his demand by making it different from the one originally brought.

Since the trial court correctly refused to permit the filing of the second supplemental and amended petition, the effect, if any, which the adoption of Ordinance 717 might have had on Ordinance 701 is not an issue before this court under its appellate jurisdiction, as this question was not decided or passed upon by the lower court.

Appellants further contend that "The city council improperly ignored petitions withdrawing signatures from the original petition where such withdrawals were made prior to the adoption of Ordinance 701".

After the petition for annexation had been filed with the governing body of the City of Lake Charles, notice of its filing was given by publication in accordance with Paragraph 2 of Section 2 of the act, which provides that notice by publication shall be given once of the filing of the petition in some newspaper published or having a general circulation in the municipality. Thereafter, on October 10, 1946, a hearing was had by the governing authorities of the city under the provisions of the act that anyone desiring to be heard with reference to a proposed ordinance of annexation shall notify the secretary of the municipality in writing, and that the governing authorities before adopting the ordinance shall grant a hearing. At the hearing both the opponents and the proponents of the proposed annexation were heard, and after the hearing the council on the

same day adopted Ordinance 701 on first reading, and it was published by title in the official journal of the city on October 12, 1946. On October 22, 1946, the ordinance was adopted by the city council on second reading.

After the ordinance had been adopted on second reading, a number of the signers of the petition for annexation filed with the city council petitions seeking to withdraw their names from the original petition. So far as we are able to ascertain, some of these petitions were filed on November 5 and another on November 8, and no showing is made that any petitions for withdrawal were filed prior to November 5.

The city council did not consider the petitions seeking withdrawal, and on the trial of the case the judge sustained this action of the council because there was no evidence that the signatures sought to be withdrawn had been obtained fraudulently or in bad faith.

The action of the city council and the ruling of the trial judge present for our determination the question: When does the right to withdraw a signature from a petition for annexation, filed under the provisions of Act No. 315 of 1946, terminate?

Counsel for appellants have cited no authorities in support of their contention that certain signers of the original petition had the right to withdraw their signatures therefrom under the facts presented in the instant case. Our study of the question presented discloses that the courts of the various states are not in accord as to when the right of a signer of a petition to withdraw therefrom terminates. (1) There are courts holding that the right expires at the time of the filing of the petition. (2) Others hold that it expires when the sufficiency of the petition has been determined. (3) Some hold that it expires when jurisdiction attaches. (4) Others hold that the right exists until the petition is acted upon by the official body to which it is addressed. (5) Still others hold that the right continues until final action is taken upon the petition.

It is universally held, however, that the signers of such a petition may withdraw their signatures at any time before the instrument is filed, and that they may not withdraw after final action has been taken. See Annotation, Right of Signer of Petition or Remonstrance to Withdraw Therefrom or Revoke Withdrawal and Time Therefor, 126 A.L.R. 1031, and the numerous authorities cited therein. The instant case does not fall within either of these universally accepted rules, since the petitions seeking withdrawals in this case were filed neither before the original petition was filed nor after final action had been taken on the ordinance by the city council. As pointed out in the annotation cited above, the answer is largely influenced by the nature of the proceedings involved and the terms of the statute under which they are instituted.

By appellants' contention that these withdrawals should be considered since they were made prior to the final passage of the ordinance, they would have this court adopt the extreme view that the right to withdraw signatures from a petition seeking annexation terminates only after the adoption of the ordinance on third reading.

The very purpose of the petition seeking annexation, containing the assent of the requisite number of resident property owners in the territory to be annexed as well as of the owners of the requisite amount in value of the property within the area proposed to be included in the corporate limits, properly certified by the assessor, is to vest jurisdiction in the municipal authorities. Under the statute it is only after 10 days have elapsed from notice by publication of the filing of the petition for annexation, properly certified by the assessor as containing the requisite number of signers, and after a hearing afforded to anyone desiring to be heard, that the council is authorized to adopt, in its discretion, the ordinance proposed by the petition.

In the instant case, pursuant to the request of all the signers of the petition that the ordinance be adopted, the city council chose, in its discretion, to adopt the ordinance on first reading, and published the fact of such adoption in the official journal of the city. The ordinance was also adopted on second reading, at which time none of the signers of the original petition had

requested that his name be withdrawn therefrom. It was only shortly before the final adoption of the ordinance on November 8 that the petitions for the withdrawals were filed with the council.

Under these facts and circumstances, the city council had acted upon the original petition prior to any request of signers of the original petition that their names be removed therefrom. When we take into consideration the nature of the proceedings involved, that is, the annexation of an area to the corporate limits of a municipality, and the terms and conditions of the statute, which we have discussed hereinabove, in our opinion the petitions for withdrawal, presented after the council had jurisdiction and had acted, came too late and were properly not considered by the city authorities.

Courts in other states have held that withdrawals came too late after the body or officer to whom the petition was addressed had acted thereon. Valley Center School Dist. No. 20 et al. v. Hansberger, 28 Ariz. 493, 237 P. 957; McQueen v. City of Moscow et al., 28 Idaho 146, 152 P. 799; Fischer et al. v. Board of Sup'rs of Washtenaw County, 156 Mich. 1, 120 N.W. 13; Sim et al. v. Rosholt, 16 N.D. 77, 112 N.W. 50, 11 L.R.A.,N.S., 372. They had before them petitions for various matters, for the establishment of drains, for the organization of a local improvement district, for local option elections, etc. In one state signers of a petition for annexation of ter-

ritory to a city cannot withdraw their names after the petition has been filed. Rogers v. Board of Directors of City of Pasadena et al., 218 Cal. 221, 22 P.2d 509.

It is not our intention, however, to hold that a signer of a petition for annexation, after further deliberation and reflection, has no right or authority to withdraw his name therefrom after the filing of such a petition, properly certified by the assessor, or within the 10-day period which must elapse after the notice is given of the filing of such petition and before the adoption of any ordinance, or before a hearing is held if one is requested; but we do hold that, after all of these delays have elapsed and these steps have been taken, and the city council in its discretion acts upon the petition, as was done in this case, by the passing of the ordinance on first and second readings, the right of the signers to have their names withdrawn expires, in the absence of any showing that their signatures were obtained fraudulently or in bad faith.

To hold otherwise we would, in effect, be saying that the opponents of a proposed annexation under the provisions of the act, after jurisdiction has been vested in the municipality, and after the governing authorities of such municipality have acted upon the petition, could, by merely inducing the signers of the petition for annexation to withdraw their signatures from the original petition, deprive the city council of jurisdiction and necessitate that the pro-

ponents of annexation seek additional signatures to take the place of those withdrawn (provided the petition does not then contain the requisite number of signatures as required by the statute) and to institute the entire proceedings anew, beginning with the filing of the petition anew, certified by the assessor as required by the act. Such a holding would unreasonably hinder and interfere with the procedure for annexation after the governing body is vested with jurisdiction to act in regard to the petition. By our decision we feel that we have given due regard to the individual right of the petitioner, and at the same time have prevented making the process of annexation unworkable.

Appellants' last contention is that Ordinance 701 of the City of Lake Charles is invalid in that it seeks to extend unreasonably the limits of the City of Lake Charles.

The area to be annexed consists of one large tract of land lying principally on the west and the south of the present corporate limits of the City of Lake Charles, and has for its outside boundaries streams, watercourses, and the lines of governmental subdivisions. Plaintiffs have designated certain portions of this area as Tracts A, B, and C. Tract A is situated in the northwest portion of the area to be annexed, Tract B in the southwest, and Tract C in the southeast. Plaintiffs contend that these areas are either swampy and subject to overflow, or farming and grazing lands, or not suited for develop-

ment as city property, or sparsely populated. They contend that the inclusion of lands having such characteristics makes the proposed extension of all the area described in Ordinance 701 unreasonable.

■ In Section 4 of Act No. 315 of 1946, it is provided that, if the proposed extension should be adjudged by the courts to be unreasonable, the ordinance of annexation shall be vacated and the proposed extension denied. Under this provision, in order to determine whether the extension of the corporate limits of a municipality is unreasonable, the proposed extension must be considered in its entirety. The question is not whether each portion of the tract included in the proposed annexation, if considered separately, would be a reasonable extension, for the ordinance stands or falls in its entirety.

The trial judge on this point cited the case of Forbes et al. v. City of Meridian, 86 Miss. 243, 38 So. 676, and McQuillin on Municipal Corporations. The ruling of the Mississippi case is the general rule as stated by McQuillin as follows:

"* * * In determining the reasonableness of the extension of corporate boundaries the extension must be considered as a whole; the question is not whether it is reasonable in each and every part. * * *" 2 McQuillin, op. cit., supra, 3d Ed., p. 320.

■ Under the well settled jurisprudence of this state, the burden of proving the unreasonableness of an annexation is upon the opponents thereof, and such unreasonableness must be made to appear by abundant evidence. See Lawrence et al. v. Town of Mansfield, 129 La. 672, 56 So. 633, and Harvey Canal Land & Improvement Co. et al. v. Gelbke, 166 La. 896, 118 So. 75.

■ The plaintiffs in the instant case, therefore, have the burden of proving the unreasonableness of the ordinance, and this unreasonableness must be made to appear by abundant evidence. With reference to annexation, what is reasonable or unreasonable depends largely upon the particular facts in any given situation, such as that the property is needed for the future growth of the city and for police, fire, or sanitary protection. It should never be permitted when made solely for the purpose of taxation or increasing the revenues of the city by this means.

■ In the instant case some of the plaintiffs by motion filed during the trial requested the trial judge to visit and inspect all of the territory to be annexed in order to determine the reasonableness of the annexation. In his written reasons for judgment he states that, after hearing all of the evidence which was introduced at the trial, he made an inspection by land, air, and water, and that, from all the evidence adduced and from his personal observation, he concluded that the proposed annexation was reasonable. After a careful reading and analysis of all the evidence, we cannot

say that there is manifest error in the trial judge's holding on this point, and certainly our reading convinces us that these plaintiffs have not sustained the burden of proving by abundant evidence that the proposed extension is unreasonable.

For the reasons assigned, the judgment appealed from is affirmed; appellants to pay all costs.

FOURNET and PONDER, JJ., dissent.

FOURNET, Chief Justice (dissenting).

The majority opinion holds that a signer of a petition presented to a city or municipality requesting the adoption of an ordinance annexing additional acreage to the city proper has a right to withdraw his name from such petition "after the filing of such a petition, properly certified by the assessor, or within the 10-day period which must elapse after the notice is given of the filing of such a petition and before the adoption of any ordinance, or before a hearing is held if one is requested; but * * * that after all of these delays have elapsed and these steps have been taken, and the city council in its discretion acts upon the petition, as was done in this case, by the passing of the ordinance on first and second readings, the right of the signers to have their names withdrawn expires, in the absence of any showing that their signatures were obtained fraudulently or in bad faith."

This holding is based on the theory that at that stage of the proceeding the municipality has been vested with *jurisdiction,* and any sanction of the withdrawal of signatures after that time would "deprive the city council of *jurisdiction* and necessitate that the proponents of annexation seek additional signatures to take the place of those withdrawn" and institute the entire proceedings anew, thus hindering and interfering with the procedure of annexation "after the governing body *is vested with jurisdiction* to act in regard to the petition." (Italics mine.)

It is difficult for me to follow this reasoning. The author of the majority opinion overlooks the fact that although the legislature in its wisdom has seen fit to authorize cities and municipalities to enlarge or contract their boundaries, this may be done *only* in the manner set out in the legislative grant and that, being creatures of the legislature with only such power and authority as that body specifically delegates to them, the city or municipality is powerless to expand the boundaries when the procedure is deviated from.

In its act the legislature, in clear and unambiguous language, sets out the procedure that must be followed for annexing or contracting boundaries of cities and municipalities. We find that this authority cannot be exerted unless the governing officials have been presented with a petition signed by the requisite number of resident property owners owning the requisite value of

the property in the area affected (25% in each instance); that this valuation must be certified by the assessor; that notice of the intended change be published; and that those interested be permitted to appear and protest. After this procedure has been followed, and only then, are municipalities authorized to adopt the ordinance that enlarges or contracts the territory.

The majority opinion seems to put stress on the fact that the city, preparatory to adopting the ordinance in this case, had passed it on first and second readings. But this is a mere formality of a procedural nature. These first and second readings are only steps toward the final adoption of the ordinance and no more give the ordinance validity than do the first and second readings of acts before the legislature make them laws. It is the final reading and adoption that gives the ordinance its life and validity. And since it appears that before this ordinance was actually adopted a sufficient number of the original signers of the petition had withdrawn their names to reduce the requisite number of property owners and assessed valuation below the required 25%, the city lacked the authority to adopt the ordinance.

For these reasons, I respectfully dissent.

## On Rehearing

LE BLANC, Justice.

The sole issue presented on the rehearing granted in this case is: When does the right of withdrawal of signatures to a petition for annexation filed under the provisions of Act No. 315 of 1946 terminate?

After citing five different rules which prevail in other jurisdictions, the majority opinion, on original hearing, adopted the one which limits the right of withdrawal to the time when jurisdiction over the subject matter attaches. This is somewhat of a middle-ground rule between two extremes: one holding that the right expires at the time of the filing of the petition; and the other, that it continues until final action is taken on the subject matter of the petition. The city council was held, in this case, to have become vested with jurisdiction after the petition filed by the required number of resident property owners in the area sought to be annexed, as well as the required percentage of property values, according to the certificate of the Parish Assessor, had been properly presented and ten days had elapsed from the time of notice of its filing by publication, and after holding of a hearing on the petition; all as is required under the provisions of the statute.

There can hardly be any doubt but at that time, the city council had become vested with power to act on the matter submitted to it and determine it, at its own discretion, and that, after all, is what is meant by the term "jurisdiction", generally speaking, with regard to such governing bodies. Vol. 23, Words and Phrases, Perm. Ed., pages 358, 381.

We still believe that the middle ground rule, based on the ground of jurisdiction having attached, is a fair and reasonable one and is particularly appropriate in a case of this kind where the procedure set out in a statute, leading to a proposition as important as the one here involved, has been carefully followed. Certainly there appears to have been no attempt or intention on the part of the city council to circumvent any of the provisions of the statute or to deviate from the procedure therein designated. The filing of the petition was duly advertised for the period required, and the hearing was held at which everyone interested was given the right to be heard. The petition was then acted on and the ordinance introduced. The ordinance was then read for a second time and it was not until the time arrived for its final adoption that some of the parties who had signed the petition sought to withdraw their names. It is true, as contended, that a person should be given the right to change his mind on any proposition but we are of the opinion that in matters involving the procedure outlined in a statute, such as the one under consideration, he should not be permitted to do so after all such procedure had been gone through, the petition which he signed acted upon, and all that remained to be done was for the governing body to take final action by adopting the ordinance. The purpose of such a statute could readily be thwarted by a few people opposed to the proposition presented, by inducing a sufficient number of signers to withdraw their names from the petition and thus take the matter out of the hands of the governing body where they had been satisfied to place it before and had permitted favorable action to be taken. As suggested in the majority opinion on the original hearing, to permit a withdrawal of names from the petition up to the time of the final action in a case like this, would make the process of annexation very difficult indeed, if not impossible.

In their brief on rehearing, counsel for plaintiff cited two cases decided by this court, neither of which would appear to be of great weight in determining the question presented. In the first, City of New Orleans v. Stewart, 18 La.Ann. 710, it was stated that a paving lien would not be held unenforceable because of the fact that the ordinance creating the same had been adopted after opposition had been filed but then withdrawn. The court went on to say: " * * * there is nothing in the law which prevents a reasonable withdrawal of the opposition." The difference between the situation in that case and the one in the case now before us is apparent. In the cited case, the action taken was of a negative character and allowed the proceedings to continue as though uninterrupted, while in the present case the action sought to be upheld by the withdrawal is one which would put an end to all of the proceedings taken up to that time, or if not to end them, then certainly to cause serious delay.

The other case cited is that of Perot **v.** Police Jury of Natchitoches Parish, 208 La. 1, 22 So.2d 666; however, there is nothing in the opinion in that case which bears on the question here at issue as the court seems to have been concerned only with the admissibility of certain counter petitions to a proposition for calling a local option election, that were irregular and invalid on their face. No mention is made of the time in which they could be filed.

Counsel also cited several cases from other jurisdictions in which, for the most part, a rule other than the "jurisdictional rule," if it can be so called, was followed. Those cases all tend to emphasize the divergence of opinion on the subject, which after all, is not one of purely legal aspects, but one that is largely concerned with policy considerations. In the final analysis it would seem that the rule which is the least harsh and unworkable, and which tends to give effect to the provisions of a statute, such as the one with which we are concerned in this case, is the proper rule to be followed. We believe that the rule that was held to apply in the majority opinion on the original hearing is the one that best carries out the intention and purpose of the law and for these reasons we adhere to the ruling therein made.

It is ordered that the original decree heretofore handed down be now reinstated and made the final judgment of the court.

FOURNET, C. J., and PONDER, J., dissent.