ELLIS, Judge.
This suit involved the legality of an ordinance of the Board of Aldermen of the Town of -Elton, Louisiana, in which the corporate limits were extended by the addition of 240 acres of land under the provisions of Sections 171 to 178, both inclusive, of title 33 of the LSA-Louisiana Revised Statutes of 1950. While the ordinance was attacked by the plaintiff on several grounds, they have been narrowed to two, viz.:
1. The question of whether or not the Mayor and Board of Aldermen of the Town of Elton, Louisiana, properly followed the mandatory provisions of LSA-R.S. 33:405.
2. Whether or not the proposed ordinance of annexation, assuming the same to be validly enacted, is invalid as being unreasonable.
The District Court rendered judgment in favor'of the defendant, and the plaintiff has -appealed.
The Town of Elton was incorporated under the Lawrason Act, Title 33, Sections 321 to 481, both inclusive of the LSA-Revised Statutes of 'Louisiana of 1950.
With regard to the first question to be decided, it is shown that the ordinance of the Town of Elton now being questioned was unanimously adopted by the Board of Aldermen on December 8th, 1950, which meeting was the result of a continuation by unanimous consent of a regular meeting held on December 6th, 1950 and a second continuation by unanimous consent of the meeting of December 7th, 1950 to December 8th, 1950. It is plaintiff’s contention that the Legislative Act governing municipal government by the Mayor and Board of Aldermen in this case strictly prohibits the continuing or adjournment of a meeting more than once and therefore the meeting of December 8th, 1950 was not a valid meeting and the enactment of the ordinance extending the corporate limits of the Town of Elton at that meeting was invalid, null and void, as • being in direct violation of the charter of the Town of Elton, specifically LSA-R.S. 33:405 which states: “Meetings, whether regular or special, may be continued over to another specified date upon unanimous consent of the aldermen. If any meeting, regular or special, fails for want of a quorum;, any number of the aldermen less than a quorum may adjourn the meeting to another specified date, but in no case shall adjourned meetings be prolonged beyond the end of the month in which they are scheduled to take place, or be continued or adjourned more than once, or to any date except that specified at the first continuance or adjournment”.
It is admitted by the defendant that the meeting at which the ordinance complained of was enacted was a second continuation of the regular meeting of December 6th, 1950, however, defendant answers plaintiff’s first complaint with the argument that under the Statute, supra, “Meetings, whether regular or special, may be continued over to another specified date upon unani* *606 mous consent of the aldermen”, and that the prohibition against the adjournment or continuance more than once of any meeting, regular or special, which failed for want of a quorum, does not apply to the continuance of a regular or special meeting upon unanimous consent of the Aldermen.
Plaintiff stresses the phrase “but in no case”, and contends that this shows an intention on the part of the Legislature to prohibit the adjournment or continuance of all meetings whether by unanimous consent of the Aldermen or by failure for want of a quorum for more than one time.
We find merit in the plaintiff’s contention, however, in view of the opinion we have reached on the second question it is not necessary that we pass upon the first contention.
As to the second question, it is well recognized in our law that the opponents of the proposed extension of the corporate limits of the town have the burden of proving the unreasonableness of the extension by abundant evidence. Our Supreme Court affirmed this rule of law and also outlined what is reasonable or unreasonable in cases of this kind in the case of Barbe v. City of Lake Charles, 216 La. 871, 45 So.2d 62, 69, in which it stated:
“Appellants’ last contention is that Ordinance 701 of the City of Lake Charles is invalid in that it seeks to extend unreasonably the limits of the City of Lake Charles.
“The area to be annexed consists of one large tract of land lying principally on the west and the south of the present corporate limits of the City of Lake Charles, and has for its outside boundaries streams, watercourses, and the lines of governmental subdivisions. Plaintiffs have designated certain portions of this area as Tracts A, B, and C. Tract A is situated in the northwest portion of the area to be annexed, Tract B in the southwest, and Tract C- in the southeast. Plaintiffs contend that these areas are either swampy and subject to overflow, or farming and grazing lands, or not suited for development as city property, or sparsely populated. They contend that the inclusion of lands having such characteristics makes the proposed extension of all the area described in Ordinance 701 unreasonable.
“In Section 4 of Act No. 315 of 1946 [LSA-R.S. 33:174], it is provided that, -if the proposed extension should be adjudged by the courts to be unreasonable, the ordinance of annexation shall be vacated and the proposed extension denied. Under this provision, in order to determine whether the extension of the corporate limits of a municipality is unreasonable, the proposed extension must be considered in its entirety. The question is not whether each portion of the tract included in the proposed annexation, if considered separately, would be a reasonable extension, for the ordinance stands or falls in its entirety.
“The trial judge on this point cited the case of Forbes et al. v. City of Meridian, 86 Miss. 243, 38 So. 676, and McQuillin on Municipal Corporations. The ruling of the Mississippi case is the general rule as stated by McQuillin as follows:
“ ‘ * * * In determining the reasonableness of the extension of corporate boundaries the extension must be considered as a whole; the question is not whether it is reasonable in each and every part. * * * ’ 2 McQuillin, op.cit, supra, 3d Ed., p. 320.
“Under the well settled jurisprudence of this state, the burden of proving the unreasonableness of an annexation is upon the opponents thereof, and such unreasonableness must be made to appear by abundant evidence. See Lawrence et al. v. Town of Mansfield, 129 La. 672, 56 So. 633, and Harvey Canal Land & Improvement Co. et al. v. Gelbke, 166 La. 896, 118 So. 75.
“The plaintiffs in the instant case, therefore, have the burden of proving the unreasonableness of the ordinance, and this unreasonableness must be made to appear by abundant evidence. With reference to annexation, what is reasonable or unreasonable depends largely upon the particular facts in any given situation, such as that the property is needed for the future growth of the city and for police, fire, or sanitary *607 protection. It should never he permitted when made solely for the purpose of taxation or increasing the revenues of the city hy this means.
“In the instant case some of'the plaintiffs by motion filed during the trial requested the trial judge to visit and inspect all of the territory to he annexed in order to determine the reasonableness of the annexation. In his written reasons for judgment he states that, after hearing all of the evidence which was introduced at the trial, he made an inspection by land, air, and water, and that, from all the evidence adduced and from his personal observation, he concluded that the proposed annexation was reasonable. After a careful reading and analysis of all the evidence, we cannot say that there is manifest error in the trial judge’s holding on this point, and certainly our reading convinces us that these plaintiffs have not sustained the burden of proving by abundant evidence that the proposed extension is unreasonable.
“For the reasons assigned, the judgment appealed from is affirmed; appellants to pay all costs,”
See also Lawrence et al. v. Town of Mansfield, 129 La. 672, 56 So. 633; Harvey Canal Land & Improvement Co. et al. v. Gelbke, Mayor, 166 La. 896, 118 So. 75; and Breland et al. v. City of Bogalousa, La.App., 1951, 51 So.2d 342.
The facts are that the present corporate limits of the Town of Elton comprise an area of 1% miles and approximately 800 acres, while the proposed area to -be annexed contains % of a mile or 240 acres. The town of Elton in 1940 had a population of 901 and in 1950 it boasted of a population of 1433. The property to be annexed lies west of the present corporate limits and is approximately divided by U. S. Highway 190, making a portion north and west of Highway 190 and the present corporate limits, and a portion lying south and west of Highway 190 and the present corporate limits, and a railroad track with no crossings.
It' is shown that in the northwest portion of the property annexed there are a total of 30 houses, 11 of which were comparatively new, that is, appeared to have been built in the last year, and there is’ one store belonging to Ed Southall, who testified on behalf of the defendant, and one gas booster plant located just south of a gully which it is shown runs through the annexed property as well as the old corporate limits of the Town of Elton, and that there are 116 residents in that area. This is a colored settlement.
South and west of U. S. Highway 190, that is, the southwest portion of the annexed property, were 13 mill shacks occupied by colored mill hands, one stock sales barn, a saw mill, a saloon, 2 cafes, and 48 residents, making a total number of •residents in the entire area annexed of 164. The residents are practically all colored.
Of the land north of Highway 190 and West of the old corporate limits of the Town of Elton, only a strip along the north line where the present colored homes are located is suitable or desirable for residential or business properties. The testimony preponderately shows that of this area the great percentage, estimated as high as 80%, is subject to overflow from Bayou Blue. As stated by Dr. Fletcher: “ * '* * this area is divided right about in the middle by a lake that has been produced by back waters from the pumping plants, and I don’t have much idea about the acreage, but the water there is enough to practically kill the timber and also establish a lake in the west portion right in between these two settlements. It is marshy. All the drainage from the prairie comes down through there and these pumping plants on the bayou pull the water for their, pumps and is is not a lake when all the dams are open, but it is during the summer and spring.”
As to the area in the southwest portion of the annexed property, all but a small percentage would be suitable for businesses or residences, however, it is shown that the majority of the owners of this property do not wish to sell and it would not be available.
As to the regularity of the annexed property, it is shown to be regular except in the southwest portion. The 1 lines of the an *608 nexed property do not extend as far south as the old corporate line for the Town of Elton. The south and west line of the annexed property extends to the northern 'boundary line of property belonging to the aunt of the present mayor, while the old corporate line extended farther south along the east boundary of this property. However, we do not think that this irregularity is shown to be sufficiently discriminatory or unreasonable as to invalidate the ordinance.
It is shown that the Negro quarters within the corporate limits of the Town of Elton are rather crowded or congested, but this is also true of the two settlements in the northwest and southwest portions of the annexed property, and this condition is due to the same reason in both instances, that is, that no one will sell their property in either area. This applies equally to the Negroes who own property adjacent to the present Negro quarters in both areas.
It is also shown that of the 800 odd acres within the old corporate limits of the Town of Elton at least 200 acres is open and undeveloped and most of it is being used for farm land. Also, there is quite a bit of unimproved and unused property in the platted portion of the Town of Elton. It is also shown that there is one small industry recently located, a garment mill, in the southeast portion of the old corporate limits of the Town of Elton. In other words, 'Elton is not bursting forth at its seams. There is no congestion shown by this record except in the areas occupied by the colored population. If defendants annexed the additional 240 acres for the purpose of relieving the congestion of the colored people, then on' this ground it is unreasonable. The annexation does not make available any more property than was already available to the colored people. The annexation of property within corporate limits has no effect upon the owner’s rights to sell or to refuse to sell. The testimony shows that one of the owners of 80 acres of land within the old corporate limits testified that he would sell for market value of approximately $300.00 a lot.
Therefore, with all the unoccupied, uninhabited and undeveloped property within the old corporate limits of the Town of Elton, it is not reasonable or necessary to annex 240 acres more in order to foster and encourage the growth and prosperity of the town. .Particularly is this true when the record shows that the property in the southwest portion of the annexation is not for sale or available for such purposes.
The record further shows that the' Town of Elton furnishes water, fire and police protection but no sanitary protection whatsoever. The streets are in bad condition and mostly ungraveled, and there are practically no paved sidewalks and no sewerage. As to police protection for the 164 residents' of the annexation, they have that already in the form of the sheriff and his deputies, and it ■ is shown that the police officer of the town of Elton is also deputized by the 'Sheriff with authority to act in the annexation. Thus, they will not get any added police protection. It would also appear that before the town should attempt to give water and fire protection to the •residents of the annexation it should give to the residents of the old corporate limits streets, side walks and sanitation. Particularly is this true when we realize that the town could furnish water, if it so desired, to the residents of the annexation without extending the limits of the town.
Defendant contends that the annexation will make the limits of the town regular. As shown it would make it more irregular to a certain extent because they leave out the mayor’s aunfs property. It is further contended that public convenience and health require the annexation. The record shows that public health and convenience require first the proper development by way of sewerage, streets and side walks within the old corporate limits of the town of Elton, There is nothing in the record to show that the residents of the annexation will gain anything in the way of fire, police, water or sanitary protection.
It is next contended that the annexation is necessary for the proper street and highway purposes. This argument is not borne out by the record, in fact, it is shown that the streets within the old corporate limits are in bad condition.
*609 All other contentions of the defendant have been covered.
In our opinion, the ordinance is unreasonable. As previously stated, we have a case of a town with 1433 people whose corporate limits covered one and 1/4 miles or approximately 800 acres of which 200 acres is undeveloped and unplatted, and with vacant property within the platted portion thereof and with poor streets, sidewalks and drainage and no sewerage, annexing 240 acres more of which a great portion is swampy, low, overflow land, with 164 inhabitants. The property annexed is not needed for the future growth of the Town of .Elton which, taken as a whole, is not congested. It will not afford any more police protection to the residents of the annexed area than they already have, and it is evident from the condition of the Town of Elton that it does not have much money upon which to operate, and it is doubtful whether the inhabitants will or can receive water or ¡fire protection, and from the record they will not receive any sewerage, drainage, sidewalks or street improvements.
It is therefore ordered.that the judgment of the District Court ’be annulled and set aside and that there be judgment in favor of the plaintiff and against the defendant as prayed for, decreeing the ordinance to be null, void and of no effect, the defendant' to pay all costs.