91 So.2d 387 (1956)
George T. HIDER, Plaintiff-Appellant,
v.
TOWN OF LAKE PROVIDENCE, Defendant-Appellee.
No. 8555.
Court of Appeal of Louisiana, Second Circuit.
November 29, 1956.
Rehearing Denied January 11, 1957.
Writ of Certiorari Denied February 27, 1957.
*388 McIntosh, Hester & Gilfoil, Lake Providence, for appellant.
Voelker & Ragland, Lake Providence, for appellee.
GLADNEY, Judge.
This action was instituted by George T. Hider, a resident tax payer of the Town of Lake Providence, Louisiana, attacking the legality of Ordinance No. 1072 of the Town, purporting to annex and bring within the corporate limits certain areas adjacent thereto. Following a trial on the merits there was judgment rejecting the demands of plaintiff who has perfected a devolutive and suspensive appeal to this court.
The ordinance in question entitled "An Ordinance Enlarging The Limits Of The Town of Lake Providence in Accordance With The Provisions of LSA-R.S. 33:171 et seq." was adopted on May 2, 1955, and seeks to annex an area to the north and northeast of the present city limits. Pertinent provisions of the statute are:
Section 172.
"No ordinance enlarging the boundaries of a municipality shall be valid unless prior to the adoption thereof a petition has been presented to the governing body of the municipality containing the written assent of twenty-five per cent in number of the resident property owners as well as twenty-five per cent in value of the property within the area proposed to be included in the corporate limits according to the certificate of the parish assessor. The valuation shall be certified to by the assessor according to the assessment of each of the owners signing the petition. * * *
"Notice by publication shall be given once of the filing of the petition in some newspaper published or having general circulation in the municipality. No ordinance enlarging the boundaries of the municipality shall be adopted until ten days after the publication of the notice. Anyone desiring to be heard with reference to the proposed ordinance shall notify the clerk or secretary of the municipality in writing and the governing authorities before adopting any ordinance, shall grant such hearing."
Section 173.
"The ordinance enlarging the boundaries of the municipality shall not become operative until thirty days after it has been published once in a newspaper having general circulation therein. * * *"
Section 174.
"Any interested citizen of the municipality or of the territory proposed to be annexed thereto may, within the *389 thirty day period before the ordinance becomes effective, file suit in the district court having jurisdiction over the municipality, to contest the proposed extension of the corporate limits and the question shall be whether the proposed extension is reasonable. If the extension of boundaries is adjudged reasonable the ordinance shall go into effect ten days after the judgment is rendered and signed unless a suspensive appeal therefrom has been taken within the time and manner provided by law. * * *"
Appellant has presented the following questions for decision:
"Where two petitions for annexation into a municipality are initiated, circulated, and presented to the municipality entirely separate from one another, and without reference to one another, the one signed entirely by residents of the one area and the other signed entirely by residents of the other area, can both areas be annexed into the municipality by a single ordinance?
"2. Where a `petition' for annexation to a municipality refers to an attached map and/or plat and/or survey to describe the area sought to be annexed, and there was in fact no map, plat or survey, nor was there any other description of any type, attached to the petition either when it was circulated and signed or when it was presented to the municipality, was such a document a petition as contemplated by LSA-R.S. 33:171 et seq.?
"3. Where an annexation ordinance excludes from the area sought to be annexed a tract of land surrounded on three (3) sides by the area sought to be annexed for no reason other than to favor the owner of said excluded tract of land, is said ordinance reasonable within the meaning of that term as used in LSA-R.S. 33:174?
"4. Where an annexation ordinance excludes from the area sought to be annexed two dwellings, surrounded on three sides by the area sought to be annexed and receiving the same benefits from the municipality (water and electricity) as were received by dwellings in the area sought to be annexed, solely to favor the owner of said dwellings, is said ordinance reasonable within the meaning of that term as used in LSA-R.S. 174?"
The first two objections question the legal efficacy of the petition for annexation and the latter two attack the reasonableness of the ordinance.
The area proposed for annexation borders on the waters of Lake Providence, the eastern end of which creates a neck of land between it and the Mississippi River. Although largely because of detailed description required in following the contour of the lake, the boundary line of the area delineated in the ordinance consists of more than four legal size sheets, a general description thereof being as follows:
It starts at the southeast corner of the airport and the waters' edge of Lake Providence and goes north along the airport boundary; it then goes east along the north line of Schneider Subdivision "C"; it then goes north along a dredge ditch; from this point it again goes east along the north line of Schneider Subdivision "D" to the "Sitton" property, now owned by Mrs. John O. Nelson (Elsie Sitton Nelson); it then goes southwardly along the Schneider-Sitton boundary to a point approximately 250 feet north of Schneider Lane; from this point the line cuts through the "Sitton" farm and moves eastwardly to Louisiana State Highway No. 596; the line then crosses the highway and follows same southwardly to a point south of the main dwelling on the Sitton farm and a tenant house; it then cuts through the "Sitton" farm once *390 more, moving east to the corner of a cemetery; thereafter the line follows natural boundaries to its point of beginning.
Counsel for appellee correctly points out:
"The only two points where present boundaries or natural lines are not followed are the two east-west lines which cut through the Sitton property. The line north of Schneider Lane cuts through a cotton field and puts into the town some of the most desirable building lots within miles of the present Town. The line south of the main farm dwelling puts into the town an area east of the new parish hospital, the presence of which makes the area ideal for any type of development, residential, commercial or industrial."
The movement for annexation was initiated due to the need of two residential areas, adjacent to and north of the town, for municipal services, particularly water and fire protection. One of the residential areas was situated east of State Highway No. 596 and is adjacent to the Mississippi River. The other area is west of said highway and is hereinafter referred to as the "Schneider Subdivision" or "Schneider Area."
On March 10, 1955, at a meeting of the Mayor and Board of Aldermen, residents of the Schneider Area appeared and stated they anticipated a water shortage in the summer; that the present supply of water, though barely adequate, would be insufficient during the summer. After a discussion of the matter it was decided to hold another meeting so that definite steps could be taken in connection with the problem presented. On March 23, 1955, one of the aldermen moved at a special meeting that in the event the residents of the Schneider Area petitioned the Town for annexation, the Town would be prepared to furnish certain service, including garbage pick-up, a six inch water line with fire hydrants, street lights, street maintenance and police and fire protection.
After the adoption of this motion a meeting was then held on the following Sunday afternoon, and attended by a large number of the residents of the Schneider Area. At this meeting which was not a meeting of the Board of Aldermen, but was an informal assembly attended by the Mayor, a number of the Aldermen, and City Attorney, an aerial map of the Town and vicinity made in 1952 was produced and sentiment developed for annexation of the subdivision into the corporate limits.
The Mayor, William B. Cone, testified on trial that at that time during an informal conference between some of the Aldermen, the City Attorney and others, it was agreed that the residents in the area east of State Highway No. 596 had similar problems and should be furnished the same facilities, and that those people should be included in the proceedings for annexation. Thereafter, there were drafted two sheets of paper to provide for the signatures of the people in the area sought to be annexed. The following inscription was at the top portion of each sheet:
"To The Mayor And Board of Aldermen of The Town of Lake Providence, In The Parish of East Carroll, State of Louisiana:
"We, the undersigned, resident owners of property having the assessed value set opposite our respective signatures hereinbelow, as certified by the Parish Assessor on Exhibit `A' annexed hereto, do hereby request and assent to the adoption of an Ordinance enlarging the boundaries of the Town of Lake Providence to include an area within which is situated our properties as generally designated on the attached map and/or plat and/or survey.
"We request that notice of the filing of this petition be given by publication in the Official Journal of the Town of Lake Providence and that an appropriate Ordinance be adopted upon the expiration of delays required by law."
*391 On or about April 1, 1955, the two sheets containing the signatures of various petitioners, each with his assessed value set down opposite his name, and the certificate of the Tax Assessor were presented to the Town of Lake Providence. The certificate of the Assessor recited:
"State of Louisiana
"Parish of East Carroll
"I, W. Y. Bell, Assessor for the Parish of East Carroll, State of Louisiana, certify that the values placed upon the property appearing opposite each name in the above and foregoing petition are the values as appear on the Assessment Rolls at the present date. In the case where the property of the present owner has not been specifically assessed, then I have estimated the value and set the value out opposite each name. From the information which I have in hand, the persons appearing in the above and foregoing petition represent 25% of the resident owners in number and 25% in value of the property within the area proposed to be included in the corporate limits of the Town of Lake Providence.
"Witness my hand and seal at Lake Providence, Louisiana, this the 1st day of April, 1955.
 "/s/ W. Y. Bell, Tax Assessor
 East Carroll Parish,
 Louisiana."
On April 8, 1955, there was published in the official journal of the Town the proper legal notice of the filing of the petition and on May 2, 1955, the Mayor and Board of Aldermen unanimously adopted the aforementioned ordinance. No notice of opposition was filed prior to May 2, 1955. This suit was instituted on June 4, 1955.
Where the Legislature delegates its power to municipal authorities to enlarge or diminish territory, strict compliance with the procedure prescribed in the statute is essential to a valid alteration of the municipality's corporate limits. An ordinance extending the corporate limits must be reasonable, impartial, general in its application, and consistent with common right. Pyle v. City of Shreveport, 1948, 215 La. 257, 40 So.2d 235; Barbe v. City of Lake Charles, 1949, 216 La. 871, 45 So.2d 62.
In determining whether a proposed extension is unreasonable, the proposed extention must be considered in its entirety and question is not whether each portion of the tract included in the proposed extension, if considered separately, would be a reasonable extension. Barbe v. City of Lake Charles, supra.
We turn our attention to plaintiff's charges against the adequacy and validity of the petition alone, which are: first, that in fact there were two petitions, and second, that there was no valid petition in the absence of an attached map, plat, survey or description of any type.
We are convinced plaintiff has not established there were two petitions. The document or documents, as the case may be, presented to the City officials for action thereon, consisted of two separate sheets as heretofore described and were attached to a single certificate of the Assessor. The sheets were circulated separately for convenience. The separate sheets constituted at most but counterparts or multiples of a single petition. Nor do we attach significance to the fact that a description of the entire area proposed for annexation was not embodied in the petition or delineated on an attached map or survey. LSA-R.S. 33:171 does not state the petition must meet such a requirement. The evidence conclusively shows there was appropriately available an aerial map with the proposed area so designated. Not a single resident of the area has complained of any uncertainty as to the boundary thereof. The certificate of the Assessor unqualifiedly declares from the information on hand the requisite number of petitioners both in number and value of property. We *392 must presume the Assessor must have had full information or he could not have executed the certificate, which, we note, has not been attacked in any wise. The above objections to the petition must be overruled as not being prejudicial.
The third ground of attack upon the validity of the ordinance is that it excludes from the area sought to be annexed a tract of land surrounded on three sides by the area sought to be annexed for no other reason than to favor the owners of said excluded tract of land, and, therefore, the ordinance is not reasonable within the meaning of the statute.
In support of this contention counsel rely strongly upon the case of Pyle v. City of Shreveport, supra. This authority declared an ordinance invalid for several reasons, one of which pertained to the exclusion of a number of lots and property which left the boundary jagged and irregular, and further, because no reasons were shown for the exclusion of the property. In its opinion on rehearing the Court questioned the fairness of the proceedings, saying, 40 So.2d at page 241:
"The record discloses no valid reason for the exclusion and inclusion of these properties. The irregularity of the boundary is not brought about by any barriers or obstacles, natural or otherwise. There is some doubt as to whether the petitions of the property owners would have been sufficient in number and amount if certain properties had not been excluded in the proposed extension."
We are impressed by the record that the Mayor and Board of Aldermen of Lake Providence were not motivated by partiality toward any individual, but felt that the annexation would be beneficial and necessary to the growth of the municipality and at the same time make available to a large number of residents badly needed facilities and services. Plaintiff's complaint that property was improperly excluded has reference only to one ownership. A part of the Sitton farm was not included. Thirty or more acres thereof is affected by the ordinance and lies in the center of the area proposed to be annexed. It comprises a part of the neck of land connecting the residential area lying to the west of Highway No. 596, with the residential section adjacent to the Mississippi River levee. If all of the Sitton property had been included the north boundary line would have traveled roughly east and west, whereas by the exclusion the line dips to the south and goes easterly, then northerly and turns east.
The Sitton property so excluded, other than containing a main dwelling house and one tenant house, is farming land only and according to the testimony of the Mayor and others, presents no present need of inclusion within the boundaries of the City. In fact, the Mayor expressed himself as not desiring to take in any more undeveloped land than the City could take care of. As he expressed it, he did not want to "bite off more than he could chew."
The evidence disclosed the action of exclusion was determined after negotiations and conferences between the owners and town officials. This approach, considered by itself, is insufficient to deny effect to the ordinance, especially as it seems to us, town officials should have the right to exercise some discretion. As pointed out in Barbe v. City of Lake Charles, supra, the reasonableness of the extension must be considered in its entirety and the question is not whether each portion of tract included in the proposed extension, if considered separately, would be a reasonable extension. It is apparent to us that the act of excluding the northern portion of the Sitton property does not and should not materially affect the extension. Had the action been otherwise, neither the owners nor the City would have benefited within any reasonable foreseeable time. We think the Pyle case has no application to the point under consideration.
*393 In Lawrence v. Town of Mansfield, 1911, 129 La. 672, 56 So. 633, 635, the court while dealing with an annexation case, said:
"The law has given this court jurisdiction to decide in matter of these extensions; that is, decide whether the extension proposed was reasonable or unreasonable.
"`Unreasonable' is a word of extensive and broad meaning.
"The evidence of unreasonableness is not always as persuasive as one may be inclined to think at first blush.
"At any rate, in order to characterize the measure of a body as unreasonable, it must be made to appear by abundant evidence that it is unreasonable."
We do not find the act of exclusion, if it be called such, was improper or of sufficient importance to justify a nullification of the ordinance on the basis of the contention so made.
Finally, it is urged as a ground for the unreasonableness of the extension that the two houses on the excluded part of the Sitton land have been and will continue to receive water and electricity from the municipality. In his reasons for judgment the trial judge rejected the contention so made. We approve of his conclusions where he had this to say, and we take the liberty of adopting his views thereon:
"Plaintiff argues that the excluded Sitton property received the same services from the Town as the residents of the area sought to be annexed with the possible exception of garbage pickup, and it was inconceivable that the areas surrounding these residences could receive police and fire protection and these excluded residences not receive that protection; that advantages received by those in the annexed area, the residents of the excluded area would receivewithout the burden of taxation. He further argues the exclusion discriminatory and arbitrary, and the ordinance unreasonable.
"Now, it must be reasoned that there will always be a borderline area, where the people living just outside the town limits will receive some police and fire protection services furnished by the Town and without the payment of Town taxes."
The burden of proof to establish the unreasonableness of the ordinance of the proposed extension rests upon the plaintiff and he must demonstrate this unreasonableness by abundant evidence. LSA-R.S. 33:174. Doise v. Town of Elton, 1953, 222 La. 973, 64 So.2d 238; Barbe v. City of Lake Charles, 1949, 216 La. 871, 45 So.2d 62; Harvey Canal Land & Improvement Company v. Gelbke, 1928, 166 La. 896, 118 So. 75; Lawrence v. City of Mansfield, 1911, 129 La. 672, 56 So. 633; Breland v. City of Bogalusa, La.App., 1951, 51 So.2d 342; Cheshire v. City of Minden, La.App., 1955, 83 So.2d 526.
It is the holding of this court that Ordinance No. 1072 of the Town of Lake Providence titled "An Ordinance Enlarging The Limits Of The Town of Lake Providence In Accordance With The Provisions of LSA-R.S. 33:171 et seq" is valid and fully complies with the requirement of said statute. Therefore, the judgment from which appealed is affirmed at appellant's cost.