## No. 12,648.

### ABBOT L. DEES VS. CITY OF LAKE CHARLES.

The citizen sued for taxes by a municipal corporation claiming power to levy taxes on the territory embracing his property under the proceedings by which the territory is alleged to have been annexed to such city may resist the collection of the taxes by injunction when there is no law to authorize the asserted proceeding or when at a later period the requisite law is enacted, bu

the record shows no substantial compliance with the statute in the proceedings on which the corporation relies. Act No. 110 of 1880; 47 An. 589; Act No. 105 of 1892.

APPEAL from the Third Justice Court for the Parish of Calcasieu. J. A. Kinder, J.

*Randall H. Odom* for Plaintiff, Appellee.

*Jerry D. Cline*, City Attorney, for Defendant, Appellant.

Argued and submitted December 15, 1897.
Opinion handed down March 21, 1898.

The opinion of the court was delivered by

MILLER, J. The defendant appeals from the judgment maintaining the injunction obtained by the plaintiff, restraining the collection of taxes on his property assessed by defendant.

The ground of plaintiff's suit is that the limits of the city of Lake Charles are fixed by the charter of the city granted in 1867; that his property is beyond those limits; that the corporate authorities have illegally levied taxes on plaintiff's property under color of certain proceedings for the extension of the city limits, and these proceedings are attacked as affording no warrant for the levy of the taxes sought to be enjoined. The defendant excepted to the suit on the ground that since its institution the taxes had been paid by a citizen, and hence, there was no longer any subject of controversy; it is also claimed the plaintiff is estopped from contesting the annexation because of benefits derived by him from the City as extended, and the defence insists that the city limits have been extended so as to embrace his property, and that these proceedings can not be assailed by him in this form of controversy.

If the plaintiff had a cause of action against the city, it seems to us his suit is not to be dismissed because a third party without the consent or knowledge of the plaintiff pays the tax, the collection of which plaintiff enjoins. We think the motion to dismiss, on this ground, was properly overruled.

An examination of the testimony on the defence of estoppel,

does not impress us as exhibiting any satisfactory grounds on which estoppels from conduct are usually derived. The plaintiff was a minor in 1894. As we gather he voted at a municipal election in 1895, hardly sufficient to conclude him, and if our appreciation of the testimony is correct, the ward in which he lived was composed in part of the domain of the original city. We are sensible there are cases in which the individual may be estopped from contesting a tax or contribution for some special benefit he has derived. We find in the record no basis of that nature to hold plaintiff liable for the tax he resists. The asserted advantage he in common with others is supposed to have derived by the inclusion of the property within the city limits is insufficient, to hold him bound. These exceptional cases in which the citizen may be bound for particular benefits conferred on his property are, of course, not within the scope of this opinion or decree.

It is urged that a municipal corporation claiming to have enlarged its territory in accordance with law, is protected from collateral attack upon the corporate capacity it asserts. The proposition we are called on to affirm, varied in form, is that notwithstanding the conditions prescribed by law for extending the limits of towns and cities, there can be no denial by the taxpayer or citizen of the corporate capacity, when the municipal corporation urges its demand against him based on the extended jurisdiction claimed by the corporation, but conferred upon it only on the conditions exacted by the statute. The extension of the limits of towns and cities involve not only the interests of the citizen, but political consequences of importance. Such extensions diminish the territorial jurisdiction of parishes placed by the organic law under the control of the police jury. Constitution, Arts. 249, 250, et seq. The boundaries of parishes can not be changed except in the mode pointed out by the law, but on the argument advanced in this case the territory of the parish must be deemed to be curtailed whenever any municipal corporation, within its limits points to the law authorizing the extension of corporate limits on certain well defined conditions, and avers compliance with the statute. If the municipal corporation is on the parish line, the same line of argument would maintain that the boundaries of contiguous parishes must be accepted as altered, whenever the municipal corporation avers an extension of its limits into an adjoining parish and holds up this

Abbot L. Dees vs. City of Lake Charles.

act of 1892, whether or not complied with. On this theory, too, we are asked to affirm that the citizen, without his consent, is to be transferred from the parochial jurisdiction with which it may be he s entirely content, to another jurisdiction, that is of the municipal corporation, and its mere claim of absorption of the territory in which the dissenting citizen resides, is to close his mouth and silence his objection that the asserted extension of the city limits is utterly destitute of legal sanction. Changes of territorial jurisdiction, directed by the Legislature, whether by the creation of municipal corporations, or of parish lines or other changes in the distribution of territory between the old and new organizations, often carry results deemed burdensome to the citizen; but he must submit to the legislative disposition of a subject deemed political in its character. See Cooley, Constitutional Limitations, p. 500; Layton vs. Monroe, 50 An. —, not reported. Our Constitution has restricted even the power of the Legislature on this subject (Art. 250). But the argument pressed on us is substantially that the changed jurisdiction of the domicile of the citizen with different instrumentalities of local government, of varied, and it may be increased taxation of his property and similar consequences incident to transferring the citizen without his consent from one to another jurisdiction, are all to be forced on him whenever the municipal corporation advances the claim of extended jurisdiction and asserts compliance with the law permitting no such extension, unless the conditions are observed it so explicitly exacts. Compliance with these conditions in the interest of the public as well as of the citizen, he is not to be permitted to question. The claim of the *de facto* corporation and the existence of the statute is to stand in place of performance of all the conditions of the statute. With full appreciation of the scope of the legal principle the basis of the exclusion of collateral attack on asserted charters, we can not give it the application contended for by the City. In our opinion such an interpretation would go far to render nugatory the act of 1892 in respect to the conditions it enacts for the extension of cities and towns. There would be no protection for citizens or parishes invoking the statute against unfounded claims of extended limits by cities and towns. We affirmed at this term the right of the citizen to arrest illegal proceedings of a city council for the enlargement of city limits. Layton vs. Monroe, 50 An. In The

Police Jury vs. Lake Charles, decided to-day, we recognize the right of the parish to assert its jurisdiction of the territory in controversy in this suit without the necessity of first seeking the aid of the Attorney General in a direct suit brought by him. With the most careful consideration, our conclusion is that the plaintiff is not excluded from his right of action to protect himself against taxes claimed to be levied without warrant of law.

We have considered the proceedings by which the enlargement of the lands of Lake Charles is claimed to have been effected. This extension, attempted first in 1884, was abortive, because there was no law to authorize it. We adhere to the conclusion that the Act No. 110 of 1880, authorizing the amendment of city charters, afforded no warrant for the addition to Lake Charles sought to be accomplished in 1884. The Act No. 105 of 1892 carefully prescribes the mode of enlarging the territory of cities or towns. The preliminary step is the petition to be signed by one-third of the owners of property within the territory contiguous to the city, proposed to be added. The petition in this case came from residents of the city, i. e., the original city as well as of that territory proposed to be added, but which seems to have been treated as part of the city. As might be expected, the petition, not as contemplated by law, from owners exclusively in the proposed addition, but indiscriminately signed by residents of the original city or as claimed to be extended, would make it difficult to ascertain whether it contained the signatures required by law. The plaintiff claims the proof not only fails to show the requisite signatures, but affirmatively shows that the prescribed signatures were not obtained. An examination of the testimony fails to satisfy us this requisite was complied with. Upon that all subsequent action under the statute depends. Layton vs. Monroe. Without observing the first requisite the later proceedings exhibited a wider departure from the statute. By its terms successive elections are to be held to ascertain the sense of the people in reference to the proposed extension, one by the electors in the territory proposed to be added, the other by the electors in the city to which the addition is to be made. But one election was held, and that by the electors of the city, the addition treated as part of it, before, under the law, it could become part of the city. At an election thus held, while it appears a majority vote was cast, it must be accepted as difficult to show that a

majority of those residing in the proposed addition was obtained for the extension. Nor do we find any satisfactory testimony that such majority was obtained. It seems to us without more, there was no compliance with the act of 1892, least of all a substantial compliance. There seems to have been the idea that the proccedings in 1894 were curatives, or in the nature of a ratification of the proceedings in 1884. At the election, such as it was, the amendments to the charter of the city, as claimed to be extended, was submitted, not the single issue of extension to be voted on separately at two successive elections. Manifestly, the act of 1892 had not the least retroactive effect, nor was it curative.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be affirmed, with costs.

MR. JUSTICE WATKINS—For the reasons assigned by me in the case of The City of Lake Charles et als. vs. The Police Jury of Calcasieu Parish et al., No. 12,722, just decided, I dissent in this case.