**40 So.2d 235**

## PYLE et al. v. CITY OF SHREVEPORT.

### No. 39014.

Dec. 13, 1948.

On Rehearing March 21, 1949.

Wilson, Abramson & Maroun, of Shreveport, for plaintiffs-appellants.

Ben F. Roberts, City Atty., Francis R. Edwards and James W. Hammett, all of Shreveport, for defendants-appellees.

FOURNET, Justice.

The plaintiffs, one a citizen and taxpayer of the City of Shreveport and the others of the two areas involved in this litigation, are appealing from a judgment of the lower court dismissing their suit to have Municipal Ordinance No. 158, (adopted pursuant to the provisions of Act No. 315 of 1946) wherein certain territories in the Country Club and Werner Park sections were sought to be annexed to and made a part of the city, annulled and vacated and the proposed extension of the city limits to include these areas denied.

It appears that a petition, signed according to the certificate of the assessor by 25% in number of the resident property owners and by 25% in the valuation of their property in the Lonoke, Parkhurst, Werner Park, and Morningside subdivisions (hereafter referred to as the Werner Park area), and a like petition signed by the required percentages in the Country Club Heights subdivision (hereafter referred to as the Country Club area) seeking to have these two areas included in the city's corporate limits were filed with the public authorities of the City of Shreveport on September 23, 1947. On November 12 following, an opposition was filed by a number of the residents of the so-called Werner Park area who opposed the annexation of this area or any part of it. The city, however, on December 9, through its council, introduced an ordinance that was, on that day, read for the first time and notice thereof was duly published in the city's official

journal calling the public's attention to the fact that it would be called up for final passage on December 23. On that day, after a public hearing had been held so that those so desiring might freely express their views, the city formally adopted the ordinance as Ordinance No. 158 by unanimous vote.

In addition to alleging that this ordinance is unreasonable and discriminatory, the plaintiffs, as a basis for its nullity, assigned a number of irregularities connected with its adoption. Most of these have apparently been abandoned since in this court they are urging only four, i. e., (1) that, the ordinance was adopted before public notice was given as required in Section 2; (2) that the city sought in this one ordinance to annex two non-contiguous areas; (3) that the petitions do not conform to the requirements set out in Section 2 of the act since the names thereto affixed are to be found in numerous petitions instead of in only one; and (4) that the assessor used the 1946 rolls in attesting to the number of owners and valuation represented in the petition instead of using the 1947 rolls and did not take into consideration the changes in ownership after January 1, 1947.

By referring to a map to be found in the record that is reproduced herein below, it will be revealed that the two areas sought to be annexed to the city are separate and distinct, although each is contiguous to the city limits; no one part of either touches the other.

The intervening area is largely commercial and industrial in character. The Werner Park area, to the lower right of the map, is well developed urban property that is almost entirely equipped with sewerage and water that has been installed and streets that have been paved at the expense of those living therein; whereas the Country Club area, lying in the upper left of the map, is a very sparsely developed section that is more rural in character, having no sewerage system and only an inadequate water supply that is piped to the residents living there through the country club facilities. While this area was at one time laid out for residential development, with properly dedicated streets and roads, large portions thereof have never been developed and, during the intervening years, weeds and grass have grown over the passageways. As adopted by the ordinance, the large tract of land blacked-out and lying in the center of the Country Club area, used by the Shreveport Country Club as a golf course, is excluded. Also, it is to be noticed that the extreme left boundary of this area is made jagged and irregular by the elimination therefrom of a number of lots that have apparently been left out deliberately.

"It is elementary that municipal corporations are creatures of the state, established by the legislature for the purpose of administering local affairs of government. Such powers as these corporations have, as well as the limits of the territory they are to govern, are all matters that are entirely within the province of the legislature, and so long as there is no constitutional provision restricting the legislature's authority in this respect, that body may enlarge or diminish the territory of these corporations, consolidate one with another in whole or in part, and even terminate their existence at will. It may also legally delegate these powers to the municipal authorities." Edwards v. Town of Ponchatoula, 213 La. 116, 34 So.2d 394, 397. See, also, Shirk v. Lancaster City, 313 Pa. 158, 169 A. 557, 90 A.L.R. 688; 38 Am.Jur. 635, Section 18, and the annotation to be found at 64 A.L.R. 1335. Generally speaking, however, when the legislature does delegate its power to the municipal authorities, strict compliance with the procedure prescribed in the statute is essential to a valid alteration of the municipality's corporate limits. Layton v. Mayor of Monroe, 50 La.Ann. 121, 23 So. 99; Dees v. City of Lake Charles, 50 La.Ann. 356, 23 So. 382; Pittsburgh, C., C. & St. L. R. Co. v. Anderson, 176 Ind. 16, 95 N.E. 363; Weeks v. Hetland, 52 N.D. 351, 202 N.W. 807; Posey v. Paxton, 201 Ark. 825, 147 S.W.2d 39; and other authorities cited at 64 A.L.R. 1341. See, also, 43 C.J. 122, Sections 81 and 82.

In the Pittsburgh case it was said that "The municipal authorities can in no case alter the boundaries unless the power so to do is conferred upon them by the Legislature; such power, when conferred, must be exercised under the circumstances and in

the manner prescribed." In the Hetland case the court held that the power of annexation as conferred on the municipalities by statute is arbitrary and extraordinary, and that when such power is exercised the statute must be strictly complied with. It was further held that all doubtful claims of power by the municipal corporation, or any doubt or ambiguity in the terms used by the legislature, are to be resolved against the corporation.

The legislature of 1946 in delegating to municipal corporations the power to contract or expand their corporate limits in its Act No. 315 specifically declared that "the limits and boundaries of existing incorporated municipalities shall remain as now established but may be enlarged or contracted by ordinance of the governing body as hereinafter provided" (Section 1), but that "No ordinance enlarging the boundaries of a municipality shall be valid unless prior to the adoption thereof a petition has been presented to the governing body of the municipality containing the written assent of 25% in number of the resident property owned in said territory as well as 25% in value of the property with the area proposed to be included in the corporate limits according to the certificate of the Parish Assessor." Section 2. In this same section is contained the provision that "Anyone desiring to be heard with reference to said proposed ordinance shall notify the clerk or secretary of the municipality in writing and the governing authorities before adopting any ordinance, shall grant such hearing." In Section 4 any interested citizen of the municipality or territory proposed to be annexed thereto is granted the right, within 30 days after the promulgation of the ordinance, to contest the proposed extension or contraction by filing suit in the district court, where the question "shall be whether said proposed extension is reasonable." In Section 8 it is further declared that "Where the boundaries of a municipality have been enlarged or contracted the ordinance with reference thereto must define with certainty and precision the territory which it is proposed to include in or to exclude from the corporate limits as the case may be and said ordinance must also define the entire boundary as changed."

Clearly this law contemplates that no territory can be annexed to a municipality unless previous thereto it has been requested to make such annexation in a petition duly certified by the assessor as having been assented to by one-fourth in number and amount of the property taxpayers within the area to be annexed, and regardless whether the area sought to be included is composed of two separate and distinct and non-contiguous parts, as is the case here, that may be annexed by an ordinance adopted upon a single petition, a question upon which we express no opinion, we do say that the citizens of two separate areas cannot by two separate petitions, each seeking to have its own respective area annexed without reference to the other, merge the two areas for annexation

in one ordinance. This, we think, is not only at variance with the letter and spirit of the law, but is also sufficient in itself to render the ordinance unreasonable. Certainly if the inclusion of one of the areas were held to be unreasonable, of necessity the ordinance would be annulled, for we have no way of determining whether the governing authorities of the city would have adopted the ordinance without the inclusion of both.

For the reasons assigned, the judgment appealed from is annulled and set aside and it is now ordered, adjudged, and decreed that Ordinance No. 158 of 1947 of the City of Shreveport is null and void and of no effect, at the cost of the defendant.

HAMITER, J., dissents and assigns written reasons.

McCALEB, J., concurs in the decree but doubts that the case is within our appellate jurisdiction.

O'NIELL, C. J., takes no part.

HAMITER, Justice (dissenting).

Up until the adoption of the assailed Municipal Ordinance No. 158 of 1947, as the majority opinion itself discloses, all of the requirements of Act No. 315 of 1946 were fully satisfied with reference to the annexation of both the Werner Park and the Country Club areas by the City of Shreveport. Separate petitions for the respective areas, each signed by 25% in number of the resident property owners who represented 25% in value of the property and each bearing the necessary certificate of the Parish Assessor, were submitted to the council; more than ten days public notice of the petitions' filing was given; and a hearing on the proposed annexations was duly held.

Following the public hearing, the previously introduced Ordinance No. 158 of 1947, entitled "An Ordinance to enlarge the limits and boundaries of the City of Shreveport and to define the boundaries of the City of Shreveport as enlarged and extended" and which described both areas, came before the City Council in regular session for final consideration. At that time the council, with all five members present and voting, unanimously adopted it.

Within thirty days thereafter, and while the ordinance was being published in accordance with law, this suit was instituted, by interested citizens of the territory proposed to be annexed, pursuant to the authorization contained in Section 4 of Act No. 315 of 1946, which reads as follows:

"Any interested citizen of the municipality or of the territory proposed to be annexed thereto may, within thirty (30) the day period before said ordinance becomes effective, file suit in the District Court having jurisdiction over said municipality, to contest the proposed extension of the corporate limits *and the question shall be whether said proposed extension is reason-*

*able.* If the extension of boundaries is adjudged reasonable the ordinance shall go into effect ten (10) days after said judgment is rendered and signed unless a suspensive appeal therefrom has been taken within the time and manner provided by law. If the proposed extension be adjudged unreasonable the ordinance shall be vacated and the proposed extension shall be denied and no ordinances proposing practically the same extension shall be introduced for one year thereafter. A similar right of appeal from the judgment of the District Court annulling the ordinance shall be granted the municipality or any interested citizen as hereinabove provided." (Italics ours.)

The decision of the majority herein annulling said Ordinance No. 158 of 1947, as I appreciate it, does not result from a determination, unfavorable to defendant, of the question (raised by plaintiffs in their petition and which the quoted Section 4 states shall be presented in a suit of this kind) of whether the proposed extension is reasonable; nowhere does the opinion disclose a finding of unreasonableness in annexing the two areas. The decision results solely from a conclusion, which I maintain is unfounded both in law and logic, that separate ordinances were necessary for the annexation of the two noncontiguous areas.

Neither Act No. 315 of 1946 nor any other statute of this state (including the charter of the City of Shreveport), of which I have knowledge, contains a requirement of that kind; and in the absence of any statutory or charter provision to the contrary the ordinance need not be confined to one of the two areas. Analogous here, but of course not decisive, is a statement of law found in 38 American Jurisprudence, verbo Municipal Corporations, Section 528, reading as follows:

"Whether a municipal corporation in granting franchise rights may include different franchise rights or purposes in the same ordinance depends primarily upon whether there is a restriction against confining an ordinance to one subject. It is generally conceded that in the absence of any statutory or charter provision to the contrary, an ordinance need not be confined to one subject, and accordingly, that any objection to an ordinance on the ground that more than one franchise is thereby granted must be based on provisions of a charter or the statutes. * * * *"

True, in Act No. 315 of 1946 we find reference being made to "an ordinance," "the ordinance," and "said ordinance," the word being used in the singular number. But in each instance, it will be noticed, there appears in connection with the word the qualifying clause "enlarging the boundaries of a municipality." The ordinance under consideration, as shown by its title, purposes only to accomplish that end, namely, to enlarge the boundaries of the City of Shreveport by the annexation of the Werner Park and Country Club areas.

It is said in the majority opinion that a merging of the two areas for annexation in a single ordinance is sufficient in itself to render the ordinance unreasonable. Further, in support of that conclusion, the opinion reasons: "Certainly if the inclusion of one of the areas were held to be unreasonable, of necessity the ordinance would be annulled, for we have no way of determining whether the governing authorities of the city would have adopted the ordinance without the inclusion of both." I thoroughly agree that the whole ordinance must be declared null if one of the areas were decreed to be unreasonable. But all of that is entirely beside the point, because the annexation of neither of the areas has been held unreasonable. This court has not so ruled; the district court, in its formal judgment, specifically adjudged the extension reasonable; and the members of the council of the City of Shreveport, who serve at the will of the electorate of' that municipality and who are thoroughly familiar with both areas, unanimously approved the entire proposal.

In this connection, since all of the council members agreed, as shown above, that the including of both areas was reasonable, what purpose would have been served by their adopting separate ordinances? The law does not require their doing of a vain and useless thing.

Rather than being unreasonable, the adoption of one ordinance for the annexing of the two areas, in my opinion, was the only reasonable and logical method available to the city council. Section 8 of Act No. 315 of 1946 requires:

"Where the boundaries of a municipality have been enlarged or contracted the ordinance with reference thereto must define with certainty and precision the territory which it is proposed to include in or to exclude from the corporate limits as the case may be and said ordinance must also define the entire boundary as changed."

Where a number of separate tracts are sought to be annexed simultaneously to a municipality by separate ordinances, there could result, in view of the requirement that "said ordinance must also define the entire boundary as changed," much confusion and even absurd and ridiculous consequences.

Suppose, for example, six separate petitions are filed at one time for the annexation to a municipality of six separate areas. Of necessity, under the rules of procedure of the council, appropriate separate ordinances are immediately prepared, introduced, the notice of introduction given, each of which must, as required by Section 8, not only describe the territory proposed to be included but also define the entire boundary as changed by each. In so drafting the six separate ordinances unquestionably untold confusion would arise. However, assuming that they can be and are properly drafted, when the ordinances come on for adoption some days later and the council rejects Numbers 1, 2 and 3, ob-

viously that body would also be compelled to reject the remaining three, notwithstanding all members favor including the territory described, because the new boundaries as fixed therein contemplate and include the areas affected by the first three of the defeated ordinances.

Again, if the council adopted all six and thereafter the court, in a contest respecting them, decreed the first three to be invalid on the ground of unreasonableness, the remainder, for the reason above given with reference to the council action, must also be adjudged invalid.

The annulling of Ordinance No. 158 of 1947 on the ground assigned in the majority opinion, furthermore, can benefit no one. On the contrary expense to the city and much delay to all parties concerned will attend the council's later introduction, publishing, and adoption of the required new and separate ordinances.

I respectfully dissent.

## On Rehearing

PONDER, Justice.

We granted a rehearing in this case because it was vigorously urged by counsel for the city that the only pertinent question presented to us was whether or not the extension of the boundaries of the city is reasonable.

The purport of our original opinion was to the effect that Municipal Ordinance No. 158 was null and of no effect for the reason that there had not been a compliance with the procedure outlined in Act No. 315 of 1946 in the adoption of the ordinance. We took the position that the power of the city to enlarge its territory was delegated to it by the Legislature by statute and that the failure to comply with the procedure outlined therein rendered the ordinance null. We cited numerous authorities to support this conclusion. After reconsidering the case, we are convinced that our conclusion in the original opinion is correct and that it eliminates the necessity of passing on the question of the reasonableness of the extension. However, since it has been so strenuously urged that we pass on the reasonableness of the extension, we have arrived at the conclusion, after a careful consideration of the record, that it is unreasonable to extend the boundaries of the city in the manner proposed.

An examination of the map attached to the original opinion discloses that the boundary lines are irregular, thereby including and excluding property in the same vicinity. It also reveals that a large area within the boundary is excluded. The record discloses no valid reason for the exclusion and inclusion of these properties. The irregularity of the boundary is not brought about by any barriers or obstacles, natural or otherwise. There is some doubt as to whether the petitions of the property owners would have been sufficient in number and amount if certain properties had

not been excluded in the proposed extension.

■ The power to extend the corporate limits having been delegated by the Legislature, it is our right and duty to inquire whether the city, in the exercise of the power delegated to it, has complied with the condition upon which it was granted, the condition being that the ordinances enacted pursuant to such power shall be reasonable, impartial, fair, general in application and consistent with law, public policy, and common right. New Orleans & N. W. R. Co. v. Vidalia, 117 La. 561, 42 So. 139.

"The legal, as well as the popular idea of a municipal corporation in this country, both by name and use, is that of oneness, community, locality, vicinity; a collective body, not several bodies; a collective body of inhabitants, i. e., a body of people collected or gathered together in one mass, not separated into distinct masses, and having a community of interest because residents of the same place, not different places. So, as to territorial extent, the idea of a city if one of unity, not of plurality; of compactness or contiguity, not separation or segregation." 37 Am.Jur. 644, par. 27.

The rule of contiguity applies to the extension of a city's boundaries. The rule is consistent with the one laid down in the Vidalia case, that an ordinance of this nature must be reasonable, impartial, general in its application and consistent with common right.

There is evidence in the record that the area embraced in the proposed extension is rapidly developing and in need of the services of the city. This evidence merely shows a necessity for an extension of the city's limits. There is a vast difference between the necessity for an extension and the reasonableness of a proposed extension. The need for an extension may be ever so great but it would not justify the extension of the city's limits in an arbitrary and discriminatory manner.

The fact that the Country Club property is used by members of the club solely for recreational purposes and the fact that it was not embraced in the petition presented to the city council would not justify its exclusion in the proposed extension since the greater part of the adjacent and surrounding property is embraced therein.

■ The arbitrary fixing of the boundary lines in such a manner as to exclude and include property in the same vicinity and the arbitrary exclusion of property within the boundaries is not only unreasonable but discriminatory.

For the reasons assigned, our original decree is reinstated and affirmed at defendant's cost.

HAMITER, Justice (dissenting).

The written reasons which I assigned for dissenting with the majority holding on the original hearing I now reaffirm.

The additional conclusion announced by the majority on this rehearing, with which I also disagree, fails to take into consideration the jurisprudence of this court to the effect that the burden of proving the unreasonableness of the proposed annexations is upon those asserting it (in this case the plaintiffs), and that the unreasonableness must be made to appear by abundant evidence. Lawrence v. Town of Mansfield, 129 La. 672, 56 So. 633; Bowman-Hicks Lumber Company et al. v. Town of Oakdale, 144 La. 849, 81 So. 367; Harvey Canal Land & Improvement Co. et al. v. Gelbke, 166 La. 896, 118 So. 75. Such a burden, as the record before us discloses, has not been discharged by these plaintiffs.

The majority opinion states that, according to a map attached to the original opinion, the boundary lines are irregular, thereby including and excluding property in the same vicinity. At two or three points on the map which are near each other, it is true, slight jogs or offsets appear. But plaintiffs offer no evidence whatever, as was their duty, to show that the irregularity (if it be such) tended to render the proposed annexations unreasonable. And I am aware of no law requiring a boundary to run in a straight line. On the other hand, defense counsel, in their brief, give the reason for the offsets as follows:

" * * * In other words, there is no necessity for the boundary line to reach out and take part of a landowner's property, place it within a municipality and leave the remainder out. That accounts for the location of the boundary line at this place. * * *"

Further, it is said that the map reveals that a large area within the boundary is excluded (referring to property of the Shreveport Country Club), and that this exclusion is not only unreasonable but is discriminatory. As I view the map, and as shown by the testimony of defendant's engineer, the Country Club area proposed to be annexed does not completely surround the Country Club property; the area bounds it on three of its four sides. As to the holding that the exclusion of the Country Club property would be discriminatory, it evidently has as a basis an assumption that the owner thereof would enjoy all the benefits and advantages afforded the owners in the annexed territory, yet it would not have to pay any taxes therefor. But there is nothing in the record to support that assumption. On the contrary, it appears that the Shreveport Country Club has provided, and it now maintains, at its own cost all of the facilities which might or could be furnished by defendant.

Neither do I deem the boundaries of the territory proposed to be annexed, both of the areas therein being contiguous to defendant's present corporate limits, to have been arbitrarily fixed, as the majority opinion indicates was done. These boundaries were decided upon by property owners themselves within each area (at least 25%

in number and representing at least 25% of the value of the property included), and were delineated in the two separate petitions which they presented to defendant's Commission Council. By a unanimous vote of its members that body approved the boundaries as thus recommended and determined.

Moreover, at the present time, according to the record, the entire proposed Werner Park area is well developed, and defendant is supplying almost 100% of the residents therein with water, 90% with sewerage, and most of them with fire protection. While not quite so thickly populated, the Country Club area is also well developed, it being suitable for residential, commercial and industrial purposes; and it is now receiving some benefits from the utilities of defendant. Too, therein is located the Jewella School, and the lands of that area have been platted into subdivisions with dedicated streets. And for improving utility services to both areas, defendant has already completed elaborate plans and it has available the necessary funds and much of the required materials.

Appropriate here is the following comment found in New Orleans & N. W. R. Co. et al. v. Town of Vidalia, 117 La 561, 42 So. 139, 144, a decision cited in support of the majority holding on this rehearing:

" * * * Upon the whole, we consider that the public at large and the community of the town will derive a distinct advantage from the proposed extension, and we do not discover in what way it will operate to the disadvantage to the plaintiffs, save in the possible increase, to a limited extent, of their taxation, and this, we think, will be measurably compensated by the benefits to accrue from the additional facilities, in the way of water, light, and police, which the town proposes to furnish."

I respectfully dissent.