354 So.2d 1362 (1978)
KANSAS CITY SOUTHERN RAILWAY COMPANY
v.
CITY OF SHREVEPORT et al. (two cases).
Fred DOUGLAS, Jr., et al.
v.
CITY OF SHREVEPORT.
No. 61519.
Supreme Court of Louisiana.
February 14, 1978.
Rehearing Denied March 2, 1978.
*1363 *1364 John Gallagher, Charles C. Grubb, Neil Dixon, Shreveport, for defendants-applicants.
Samuel W. Caverlee, Arthur R. Carmody, Jr., Wilkinson, Carmody & Peatross, Frederic L. Miller, Peters, Ward & Miller, Shreveport, for plaintiffs-respondents.
LEMMON, Justice Ad Hoc.
These three lawsuits, filed at various stages and ultimately consolidated in the district court, were instituted initially to enjoin adoption of, and later to invalidate, an annexation ordinance. If the ordinance is upheld, the City of Shreveport is annexing approximately nine square miles at its northern edge, known as the "Cooper Road" area. The annexed territory contains a large residential area with approximately 12,000 residents, an industrial area occupied by Kansas City Southern Railway Company (KCS), and certain open land.[1]
In the fall of 1976, after several unsuccessful efforts spanning some eight years, the Cooper Road Development Association, comprised of residents of the area, initiated the drive which culminated in submission of the annexation petitions required by R.S. 33:172.[2] *1365 On May 6, 1977 the filing of the petitions for annexation was advertised. In October, after submission of additional petitions and withdrawal of some signatures, the Shreveport City Attorney certified that the petitions contained a majority of the registered voters in the area. On November 7, 1977 the Assessor certified the property valuation according to the assessment of each of the owners signing the petition.
On December 13, 1977 the Shreveport City Council introduced and adopted on first reading the annexation ordinance. This ordinance was advertised on December 17, and a public hearing thereon was called for December 27, 1977.
In the meantime KCS attacked the certification and instituted suit on December 14 to enjoin the Mayor and Council of the City of Shreveport from holding a public hearing and from voting on adoption of the ordinance. Trial of the preliminary injunction was held on December 21 and 22, whereupon judgment was rendered in favor of the City, denying the preliminary injunction and dissolving the temporary restraining order which had been issued. KCS applied for supervisory writs to the court of appeal, which were denied, and then appealed from the judgment denying the preliminary injunction.
On December 27, 1977 the City Council held the public hearing, and the ordinance under attack was adopted that same day upon second and final reading.
The trial court heard the permanent injunction on January 17, 1978, in a trial consolidated with two additionally filed lawsuits, one by Douglas and other residents of the City of Shreveport and the unincorporated Cooper Road area, and the other by KCS.[3] In these additional suits plaintiffs generally contended the ordinance violated the certification requirements of R.S. 33:172, was unreasonable, and was unconstitutional in the application of the certification procedure to KCS. The evidence at trial consisted of that which had been presented on the trial of the preliminary injunction on December 21 and 22, incorporated by reference, and additional written and verbal stipulations.
On January 23, 1978 the trial court rendered judgment in favor of defendants in all three suits, dismissing the attacks upon the annexation ordinance. Plaintiffs appealed, but after preparation of the appellate transcript and before lodging in the court of appeal, the defendants filed a motion to have this court exercise its supervisory jurisdiction and expedite final determination by granting writs in the case and taking the case up prior to resolution by the intermediate court. All parties agreed on the advisability of obtaining an expeditious resolution of the litigation.
In the motion the parties pointed out that the City of Shreveport had proposed to call a special election on May 13, 1978 for consideration of a new city charter which, if *1366 passed, will change the form of government from a Commission Council with all Commissioners elected at large to that of a Mayor-Council with all councilmen elected from single member districts, and that in order to call the election it is necessary that the boundaries of the single member districts be fixed, which is impossible without prior determination whether the Cooper Road area is part of the City of Shreveport. Furthermore, applicants related that if the annexation ordinance is valid and the citizens of the Cooper Road area are citizens of the City of Shreveport, justice and fairness dictated that they be afforded the opportunity to vote on the proposed City Charter.
Because normal judicial delays would prevent finality in this litigation in time to facilitate the proposed election, we granted writs in this case on February 3, in effect directing that the appeal by plaintiffs bypass the court of appeal. We set the case down specially for oral argument on Monday, February 6, 1978.
Withdrawal of Signatures to Petitions
Plaintiff contends the trial court erred in excluding evidence of withdrawal of signatures on the basis that the withdrawals were untimely.
Prior to certification several persons who had signed the petitions expressed their desire to withdraw their signatures, and their names were stricken. On December 21, 1977, the date of trial of the preliminary injunction, several additional persons requested withdrawal, which was allowed by the trial judge. However, the judge held there still remained a sufficient number of signatures to meet the statutory requirements.[4]
On December 27, 1977 at 9:00 a. m., one hour before the scheduled public hearing, additional withdrawals were filed, but these withdrawals were not considered by the City Council. At the trial of the permanent injunction the trial court also held that these withdrawals should be excluded, in the absence of a showing of fraud or bad faith. In this court the parties have stipulated that if the withdrawals are allowed, there are not sufficient signatures remaining to constitute a majority of the resident property owners.
Relying on our decision in Barbe v. City of Lake Charles, 216 La. 871, 45 So.2d 62 (1949), plaintiffs contend the signers of a petition for annexation may withdraw their assent at any time before the completion of all statutory prerequisites to adoption of the ordinance by the City Council. They argue that since R.S. 33:172 requires a public hearing, if requested, "before adopting any ordinance", withdrawals prior to the public hearing are timely.
Inasmuch as the statute is silent as to the right of withdrawal or the time within which the right may be exercised, the court must decide the issue. Faced with this problem in the Barbe case, this court held that withdrawals after the public hearing, but before the vote for final adoption, were untimely.[5]
The power to extend or contract corporate limits of municipalities is a legislature power. As an incident to its power to create or abolish municipalities, a state legislature may enact a statute annexing contiguous territory or authorizing a procedure for annexation, to become operative upon the happening of certain contingencies. Such a statute, enacted and applied within constitutional limitations, does not violate the rights of residents and landowners of the territory, and annexation under such a statute, without the assent and even over the protests of the residents and landowners, is not denial of due process. State ex rel. Kemp v. City of Baton Rouge, 215 La. 315, 40 So.2d 477 (La.1949).
*1367 The legislative act authorizing annexation in this state requires majority assent of the registered voters and of the resident property owners, plus assent of the resident property owners of 25% in value of the property owned by them, the assent being expressed by petition which, upon certification, authorizes the startup of the municipality's legislative machinery for adoption of an annexation ordinance. On rehearing this court in Barbe expressed concern as to the effect on this statute if withdrawals were allowed to interfere with the legislative process, once begun:
"The purpose of such a statute could readily be thwarted by a few people opposed to the proposition presented, by inducing a sufficient number of signers to withdraw their names from the petition and thus take the matter out of the hands of the governing body where they had been satisfied to place it before and had permitted favorable action to be taken. As suggested in the majority opinion on the original hearing, to permit a withdrawal of names from the petition up to the time of the final action in a case like this, would make the process of annexation very difficult indeed, if not impossible."
The judicial decision on time for withdrawal involves a balancing of conflicting interests, with due regard for recognizing individual rights of the residents, property owners and citizens otherwise opposed to annexation, while preserving the workability of the annexation process. The Barbe suit called upon this court to draw a line in order to determine if the withdrawal requests fell beyond that point in time, but the opinion on original hearing carefully declined to draw this line precisely so as to preclude further consideration upon presentation of a different factual situation.[6] The holding was that the withdrawals came too late under the facts of that case.
In the present case we also hold that the withdrawals came too late. Without delineating a specific deadline for withdrawals, we reason that allowing withdrawals on the day of the final vote on adoption, after certification of the petitions and after numerous significant actions by the municipality's governing body, would produce havoc and interfere unduly with the legislative process in completing the annexation procedure.
In order for the governing body to be adequately informed and prepared for the final vote on adoption of the ordinance, studies must be undertaken, and considerable legislative and executive time must be expended. The public hearing in this case, on the day of the vote for final adoption, was the culmination, and not the beginning, of extensive municipal government activities and deliberations. The process, which was begun with the certified assent of a majority of the registered voters and the resident property owners, cannot be destroyed by the withdrawal of that consent by a few when the process has been virtually completed. Surely the legislature in enacting R.S. 33:172 could not have intended a right of withdrawal at that stage of the process so as to defeat the entire annexation procedure.
On the other hand, there was an ample amount of time, after advertising of the filing of the petitions in May, 1977, for the proponents to obtain additional signatures and for the opponents to secure requests for withdrawals. In fact, both sides did utilize this time for those purposes, and the residents *1368 and property owners of the area were afforded ample opportunity to have both sides of the question presented before taking a final position thereon.
Sufficiency of Petitions of Registered Voters
The citizens seeking annexation circulated two types of petitions, one entitled "registered voters" and one entitled "property owners". Those who qualified under both categories were asked to sign both petitions, and the two petitions in multiple counterparts were submitted separately.
At the trial of the preliminary injunction the withdrawals allowed by the trial judge at that hearing brought the number of signatures of the "registered voters" petition below a majority. However, the City Attorney's check of both sets of petitions had revealed that 161 registered voters had signed only the "property owners" petition, and the trial judge, over objection, considered the petitions as one and counted these 161 signatures in order to bring the number of registered voters above a majority.[7]
We find no error in considering the signatures of registered voters contained in both sets of petitions. There is no statutory requirement for dividing the petitions into two categories, and utilization of that procedure for the sake of convenience does not preclude consideration of every registered voter who signed any petition. Moreover, the use of counterpart petitions is reasonable and probably necessary. See Hider v. Town of Lake Providence, 91 So.2d 387 (La.App. 2nd Cir. 1956).
Certification Based Only on Resident Property Owners
Citing Morrison v. City of Pineville, 288 So.2d 705 (La.App. 3rd Cir. 1974), KCS (A foreign corporation) contends that the Assessor's certification was invalid because only resident property owners and property owned by resident property owners were considered for purposes of determining number and value.
The Morrison case interpreted R.S. 33:172 prior to the 1972 amendment, at which time the statute required assent of "twenty-five percent in number of the resident property owners as well as twenty-five percent in value of the property within the area proposed to be included . . . ."[8] The 1972 amendment changed this provision to require "a majority in number of the resident property owners as well as twenty-five percent in value of the property of the resident property owners within the area proposed to be included . . . ."[9] (Changes shown by emphasis supplied)
The amendment made two distinct and apparently purposeful changes: the required percentage in number of resident property owners was increased, and the property of other than resident property owners was excluded from consideration for the required value percentage. Since KCS was not a resident property owner, the trial judge properly accepted the Assessor's certification based on only the number of resident property owners and the value of their property.
Certification Using 1976 Assessment Rolls
In certifying the resident property owners, the Assessor used the 1976 assessment rolls. He testified that use of the 1977 rolls, which were not filed until seven days after his November 7 certification, would have required beginning the certification anew after the filing and would have taken another three to four months to complete. We find the use of the 1976 rolls was reasonable to complete the certification procedure *1369 which had been in process for several months prior to filing of the 1977 rolls.
We also conclude that use of the computer print-out list of the homestead exemptions was a reasonable method of identifying the resident property owners, although the probability was that a few people eligible for the exemption did not file for it. The statute cannot reasonably be interpreted to require the Assessor to make an actual check of each property in the area.
Reasonableness of the Ordinance
Plaintiffs finally contend, on several grounds, that the annexation ordinance is unreasonable.[10] KCS urges that the annexation of its property is unreasonable because the annexation is financially unsound and its property was included only to provide a significant tax base. Individual plaintiffs charge that the ordinance is unreasonable because black people living in the annexed area will be forced to suffer discrimination as have black citizens of Shreveport, and because the citizens in the annexed area will have to pay city tax millage in addition to their existing millage for sewerage and water in their area. Intervenors additionally argue that the annexation is unreasonable because it will require a costly upgrading of homes and rental dwellings built without reference to the City's Housing Code.
In order to determine whether the extension of corporate limits of a municipality is unreasonable, the proposed extension must be considered in its entirety. The issue is not whether each portion of the tract included in the proposed annexation, if considered separately, would be a reasonable extension, for the ordinance stands or falls in its entirety, and the burden of proving unreasonableness is on those parties opposing the annexation. Barbe v. City of Lake Charles, supra; Hider v. Town of Lake Providence, supra.
Reasonableness in enlargement of municipal boundaries is determined by a number of factors such as a substantial increase in population; a need for additional area for construction of homes, mercantile, manufacturing or industrial establishments; a need for additional land area to accommodate the present or reasonably anticipated future growth of the municipality; and the extension of police, fire, sanitary protection or other municipal services to substantial numbers of residents of adjacent areas. Nix v. Village of Castor, 116 So.2d 99 (La.App. 2d Cir. 1959). As we said in Barbe v. City of Lake Charles, supra 45 So.2d at 70 "With reference to annexation, what is reasonable or unreasonable depends largely upon the particular facts in any given situation . . . ." The court considers generally the benefits and detriments to both the municipality and the area to be annexed.
The mayor testified that annexation was desirable because (1) the Cooper road area constitutes a physical barrier to the northern expansion of the City of Shreveport which needs expansion areas; (2) the city has undergone recent population growth; (3) there exists a need for an area for construction of residences of the general classifications consistent with the Cooper Road area; (4) there exists a need for an area for expansion of commercial and industrial development for the City of Shreveport; and (5) there is an unhealthy situation when a municipality has adjacent to it a large unincorporated area containing a concentration of economically deprived citizens. The future of both the City and the unincorporated area are purportedly jeopardized by this latter condition.
There was evidence before the trial judge to support a conclusion that the annexation in this case is being effected so as to add a *1370 substantial area of existing and potential housing, business and industry to the City of Shreveport, and that the area to be annexed is generally adaptable for prospective urban use. The extension of municipal services to 12,000 citizens at the city's northern edge is a benefit both to the city and to the area to be annexed. Nix v. Village of Castor, supra. Furthermore, those opponents whose housing is so substandard as to be affected by enforcement of city codes could equally be affected by any similar health and sanitation regulation imposed by a state or federal agency, but on the other hand, the entire area will be upgraded by annexation to a municipality which sets and enforces minimum health and sanitation standards.
Significantly, the area to be annexed constitutes a northern barrier to the growth of the City of Shreveport. The boundaries of the area to be annexed are, on its eastern and the eastern part of its southern line, co-terminus with the present boundary of the City of Shreveport. The northern and western edges of the area to be annexed follow east-west and north-south roadways which encircle the area of existing residential streets. On the western part of its southern line, the boundary of the area to be annexed is the railroad track which already forms the City limits co-terminus to the eastern part of the southern line of the area to be annexed.[11]
Thus, the area can be generally described as a compact area on the northern edge of the City which generally has as its boundaries straight man-made and natural lines, and the present City limits. Regularity of boundaries, unity and compactness of municipal limits is one of the important factors to be considered in annexation cases. Pyle v. City of Shreveport, 215 La. 257, 40 So.2d 235 (1949).
Of course, KCS's property cannot be included merely to provide tax revenue for the overall annexation which is otherwise beneficial, but we cannot say from this record and the entirety of the circumstances that the boundaries were drawn for such a purpose.
We conclude that plaintiffs have failed in their burden of establishing that the ordinance is unreasonable.
Constitutionality
KCS, complaining of exclusion from those whose assent is required for annexation, alternatively contends that failure to include it and its property in the certification requirements is the unconstitutional taking of property without due process.
As stated earlier, annexation by legislative act or by a legislatively authorized procedure, without the assent of the residents or the landowners, is a valid exercise of legislative power which does not offend due process requirements. The due process rights of property owners are adequately protected by the statute's requirement of reasonableness.
KCS's complaint is perhaps more properly considered in terms of denial of equal protection to non-resident property owners because of unreasonable classification between property owners. However, it is only the initiating of the annexation process in which residents participate. Once the process is initiated by petition, the decision for approval or disapproval is not vested in either the residents or non-residents, but by legislative authorization is vested in the municipality's governing body. Since the constitutionality of the process is not dependent upon the assent of the inhabitants and property owners, we do not find the statute constitutionally offensive because only the residents are allowed to initiate the process by petition.[12]
*1371 Decree
For the reasons assigned, the judgment of the trial court is affirmed at appellants' costs.
AFFIRMED.
SUMMERS, J., dissents for the reasons assigned.
DIXON, J., recused.
SUMMERS, Justice (dissenting).
In my view the withdrawal of signatures to petitions, reducing the requisite number below, the majority required by statute, was timely. The City was, therefore, without authority to adopt the annexation ordinance. Under this theory it is not necessary to consider the other issues. Acceptance of the conclusion that the signatures were withdrawn timely disposes of the entire case, requiring that the ordinance be declared invalid.
A fundamental premise of the majority opinion is that the statute is silent as to the right of withdrawal or the time within which the right may be exercised. Such a premise is not well-founded. La.Rev.Stat. 33:172.
No annexation ordinance is valid, under explicit terms of the statute, unless "prior to adoption" a petition has been presented to the governing body containing the written consent of a majority of the registered voters. Because the withdrawals here occurred "prior to adoption", the assent of the necessary majority was not included on the petitions presented. A right to withdraw assent "prior to adoption", where the withdrawal affects the majority, is therefore implicit in the statute because there is nothing in the law which prevents a timely withdrawal. If there is a right to withdraw any opposition to the annexation prior to adoption, which I am sure the majority will concede, a necessary corollary requires that there be a right to withdraw assent to annexation "prior to adoption." Barbe v. City of Lake Charles, 216 La. 871, 45 So.2d 62 (1950); City of New Orleans v. Stewart, 18 La.Ann. 710 (1866).
Such is the explicit holding of this Court in Barbe v. City of Lake Charles, supra. There a middle ground rule permitting withdrawal of assent to a petition favoring annexation prior to adoption was considered a fair and reasonable one, particularly appropriate to the procedure set out in the statute now before the Court. In applying the rule the Barbe Court permitted withdrawal at any time prior to the hearing required to be held prior to adoption. In the instant case signatures were withdrawn prior to the hearing in strict compliance with the Barbe rule; that much is undisputed. Notwithstanding this compliance, the majority overrules the Barbe Case. No compelling reason is assigned for disregarding and overruling the Barbe Case and none is apparent, as I shall point out hereafter.
The legislature's power to extend or contract corporate limits of municipalities is relied upon by the majority. Stating that this power permits the legislature to enact statutes which prescribe a procedure allowing annexation to become operative "upon the happening of certain contingencies", the majority disregards the contingencies prescribed in the statute under consideration. Section 172 of Title 33 sets forth in unmistakable terms that "[n]o ordinance enlarging the boundaries of a municipality shall be valid unless prior to the adoption thereof a petition has been presented to the governing body of a municipality containing the written assent of a majority of the registered voters . . . ." (emphasis added). Existence of a petition containing the assent of a majority prior to adoption is a *1372 contingency which must be satisfied before a valid annexation ordinance can be adopted. Thus if the withdrawal of signatures of "assent" are permitted and if those signatures are withdrawn at any time "prior to adoption", as these facts show that they were, the legislative "contingencies" referred to by the majority have not happened; that is to say, no petition of a majority existed "prior to adoption." Adoption can only take place when the governing body votes for or against the proposed ordinance of annexation. For the Court to interpret the statute to require withdrawal at some earlier time is to rewrite the statute. The legislative will is frustrated thereby. What is involved here is the all important right of the signatories to the petitions to exercise their right to change their minds within the time allotted to them by the legislaturethat is, prior to adoption. It is not a matter to be bandied about by spurious reasoning.
By referring to the Barbe decision, the majority expresses concern that withdrawal of signatures (assent) to the annexation petition when the governing body had been induced thereby to take "favorable action" would thwart the purpose of the statute. In my view the opposite is true. The purpose of the statute is thwarted when the adoption of the annexation ordinance is upheld under circumstances where the signatures of a majority of registered voters do not appear on the petition "prior to the adoption". To say that the governing body has taken "favorable action" on the petition for annexation before adoption is a faulty assumption. Such an assumption presupposes that by complying with the required procedural prerequisites to voting for or against the proposed ordinance the governing body has taken "favorable action."
Such an assumption is based upon the erroneous premise that the governing body is the proponent of the annexation ordinance and not the majority of the registered voters and property owners in the area to be affected. According to the plain language of the statute the citizens of the affected area are requesting annexation, not the governing body. The legislation neither permits nor condones the majority's faulty assumption. The governing body is not taking "favorable action" by pursuing the procedural directives leading to adoption. Only adoption itself constitutes "favorable action." Until that adoption the governing body retains the right to vote against the annexation. In my view, the statute contemplates that petitioners have a like right to withdraw their assent "prior to adoption."
The Court's statement that the legislature could not have intended a right of withdrawal prior to the hearing is repudiated by the language of the statute itself and by the decision to the contrary in the Barbe Case which the legislature has not overruled for twenty-eight years. The statute requires a majority "prior to adoption" of the annexation ordinance, which the Barbe Case has held to mean that assents to annexation may be withdrawn prior to the hearing which precedes adoption. But this Court overrules the Barbe Case and imposes a new rule on these plaintiffs, saying that withdrawals before the hearing came too late. The unsupported basis for this action is that to permit withdrawals on the day of the final vote on adoption, after certification of the petition and after numerous significant actions (not listed or specified) by the municipality's governing body, would produce havoc (not described) and interfere unduly with the legislative process (not explained) in completing the annexation procedure.
The role of the governing body is to entertain the petitions for annexation, see that the proper procedures are followed and then vote for or against the ordinance of annexation. No momentous "significant actions" are involved, no onerous, expensive or extraordinary "legislative process" is required, and certainly no "havoc" results if prior to voting for or against adoption the citizens of the affected areathose most concernedwithdraw their assent "prior to adoption." Overruling the Barbe Case is a disregard of the rule of law and amounts to the Court doing what its predelictions dictate in every case, hardly in keeping with *1373 the American ideal of government by law, not by men.
Contingencies to be fulfilled prior to adoption of an annexation ordinance are set forth in the statute; creation of other contingencies or altering those prescribed by the legislature are not judicial functions. The Court's decision today demonstrates why judicial legislation is repugnant to law and order. Relying upon the clear expressions of the Barbe Case, plaintiffs now find their rights are being decided under a rule of law never before announced by the legislature or this Court. Consequently they will find themselves and their property under a government to which the majority has not assented. As a result their property will also be subject to taxation and regulation without the consent of the majority.
I would deny validity to the annexation ordinance.
NOTES
[1] Without the annexed area the City of Shreveport contains approximately ninety square miles and 201,000 people.
[2] The statute, which appears in Title 33, Municipalities and Parishes, Sub-Part V B, Extension or Contrtaction of Corporate Limits of Municipality by Means of Petition and Ordinance, provides in pertinent part:

"A. No ordinance enlarging the boundaries of a muncipality shall be valid unless prior to the adoption thereof a petition has been presented to the governing body of a municipality containing the written assent of a majority of the registered voters and a majority in number of the resident property owners as well as twenty-five percent in value of the property of the resident property owners within the area proposed to be included in the corporate limits according to the certificate of the parish assessor. If there are no registered voters residing in the area proposed for annexation, then the requirement for a majority of the registered voters in the petition shall not apply. The valuation of the property within the area proposed to be annexed shall be certified to by the assessor according to the assessment of each of the owners signing the petition. Where there has been a change of ownership since the last assessment of the property, the assessor shall certify the valuation of the present owner in accordance with the last assessment appearing on the rolls against any previous owner. In any case where the property of the present owner has not specifically been assessed the assessor shall estimate the assessed value of the property for the current year and certify the same as the value of the property.
* * * * * *
"B. Notice by publication shall be given once of the filing of the petition in some newspaper published or having general circulation in the municipality. No ordinance enlarging the boundaries of the municipality shall be adopted until ten days after the publication of the notice. Anyone desiring to be heard with reference to the proposed ordinance shall notify the clerk or secretary of the municipality in writing and the governing authorities, before adopting any ordinance, shall grant such hearing." * * *
[3] There was also filed in the Douglas suit a petition of intervention on behalf of a number of citizens who adopted all prior attacks on the annexation ordinance and added certain allegations of their own concerning unreasonableness of the ordinance.
[4] The assignment of error as to this holding will be discussed separately.
[5] In the Barbe case the procedure for adopting the ordinance was notice by publication of the filing of the petition; followed by a public hearing, upon completion of which the City Council adopted the ordinance at first reading; then an adoption at second reading ten days later; and then final adoption 17 days later. The requests for withdrawal were filed three days before final adoption.
[6] The decision stated:

"It is not our intention, however, to hold that a signer of a petition for annexation, after further deliberation and reflection, has no right or authority to withdraw his name therefrom after the filing of such a petition, properly certified by the assessor, or within the 10-day period which must elapse after the notice is given of the filing of such petition and before the adoption of any ordinance, or before a hearing is held if one is requested; but we do hold that, after all of these delays have elapsed and these steps have been taken, and the city council in its discretion acts upon the petition, as was done in this case, by the passing of the ordinance on first and second readings, the right of the signers to have their names withdrawn expires, in the absence of any showing that their signatures were obtained fraudulently or in bad faith."
[7] We need not decide whether the withdrawals at the trial of the preliminary injunction were timely. Even if these withdrawals were properly allowed, the 161 signatures discussed in this section bring the number of registered voters above a majority.
[8] The Morrison case held that "property" in the pre-1972 statute includes all property on the commercial and industrial rolls and the public services rolls.
[9] The 1972 amendment also added the requirement of assent of a majority of the registered voters.
[10] R.S. 33:174, relating to a suit to contest annexation, provides:

"Any interested citizen of the municipality or of the territory proposed to be annexed thereto may, within the thirty day period before the ordinance becomes effective, file suit in the district court having jurisdiction over the municipality, to contest the proposed extension of the corporate limits and the question shall be whether the proposed extension is reasonable. * * *" (Emphasis supplied)
[11] KCS's property, located in the southwestern corner of the area to be annexed, is within this area because of continuing the boundary along this railroad track. However, locating the boundary along Blanchard Road, as suggested by KCS, would cut off the northwestern area of residential streets.
[12] Although the issue is not raised as an assignment of error, the author notes his view that the statute allows some, but not all, property owners a voice in defeating annexation by refusing to sign the petition and thus treats property owners unequally without reasonable classification. However, property owners cannot constitutionally be allowed to defeat annexation which is otherwise reasonable, since ownership of property is not a legitimate basis for limitation of the right to vote when the benefits and burdens of the issue affect property owners and nonproperty owners alike. Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969). Inasmuch as allowing property owners in general the right to defeat annexation is irrational, KCS's exclusion by classification is not denial of equal protection.