Dear Mr. Carson and Mayor Caruso:
In response to a request from Mr. Lane Carson, Assistant District Attorney, Twenty-Second Judicial District, this office rendered an opinion, which is designated as "Opinion 01-191", dated May 18, 2001. The Honorable Salvatore A. "Sam" Caruso, Mayor of Slidell, and numerous other mayors have requested that this office reconsider the opinion.
The issue involved in the opinion was whether property, which was adjacent to municipal corporate limits, but which contained no registered voters and no resident property owners, could be annexed into municipal limits.
Opinion 01-191 cited two prior opinions of this office. First, an opinion dated September 6, 1973 (Report and Opinions of the Attorney General of Louisiana, January 1, 1972 to January 1, 1974, p. 138) and Opinion 93-542, which the author of 01-191 found to be in conflict. The 1973 opinion concluded that where land that is adjacent to a municipality had no registered voters and no resident property owners, said property could be annexed into municipal limits provided that twenty-five percent of the non-resident property owners in value petitioned the municipality for annexation.
Opinion 93-542 applied the Louisiana Supreme Court decision in KansasCity Southern Railway v. City of Shreveport, (LA. 1978) 354 So.2d 1362, which concluded that the Assessor's "use of the computer print-out list of homestead exemptions was a reasonable method of identifying resident property owners . . . The statute cannot reasonably be interpreted to require the Assessor to make an actual check of each property in the area." The Court in Kansas City Southern Railway noted that the use of the homestead exemption list would exclude from consideration resident property owners who did not file for a homestead exemption. The Louisiana Supreme Court recognized that an assessor cannot determine whether an owner of property, who does not file for a homestead exemption, is a "resident property owner" without the Assessor conducting a parcel by parcel investigation beyond the records in the Assessor's office.
Thus, Opinion 93-542 concluded: First, that for the purposes of certifying a petition for annexation, the Assessor's sole use of the homestead exemption rolls was reasonable. Second, that property owners who do not reside at the location of their property ". . . may be excluded from the Assessor's certification. Third, that only property owners who reside in the area sought to be annexed could be considered by the assessor in his certification of an annexation petition. Fourth, that a valid petition for annexation must be signed by: 1. A majority of registered voters; 2. A majority in number of resident property owners, and; 3. Of the resident property owners who sign the petition, they must own twenty-five percent in value of the property in the area. This opinion made no mention of the 1973 opinion. We agree with the conclusion that Opinion 93-542 and the 1973 opinion are in conflict, and we will seek to resolve that conflict.
In Opinion 01-191, the author concluded that where an area to be annexed does not have any registered voters nor any resident property owners, the property may be annexed. The 1973 opinion was, in part, relied on in Opinion 01-191 and it concluded that if there were a petition signed by the non-resident property owners of twenty-five percent in value of the total property in the area to be annexed, and the property shared a common boundary with the municipality of ninety percent, the property could be annexed.
The statute that authorizes municipalities to annex property into municipal limits is R.S. 33:172, which provides in pertinent part as follows:
 § 172.Petition to annex territory; valuation of property; notice of filing petition; hearing concerning proposed ordinance; alternative methods
 A. (1) No ordinance enlarging the boundaries of a municipality shall be valid unless, prior to the adoption thereof, a petition has been presented to the governing body of a municipality containing the written assent of a majority of the registered voters and a majority in number of the resident property owners as well as twenty-five percent in value of the property of the resident property owners within the area proposed to be included in the corporate limits, all according to the certificates of the parish assessor and parish registrar of voters. If there are no registered voters residing in the area proposed for annexation, then the requirement for a majority of the registered voters on the petition shall not apply. (Emphasis added)
 * * * * C. Notwithstanding the provisions of Subsection A of this Section, any municipality may annex contiguous areas by election provided at least ninety percent of the boundary of the area to be annexed is common to the boundary of the municipality, and provided further than a majority of the registered voters residing in the area proposed for annexation, and voting in an election held according to the provisions of R.S. 33:154
through 161 vote in favor of such annexation. No election as provided herein shall be necessary if there are no registered voters residing in the area to be annexed.
 D. Notwithstanding the provisions of Subsection (A) of this section, any municipality may annex contiguous areas without the petitions required by said Subsection (A), by ordinance, provided prior to the adoption of any such ordinance, the question of the annexation shall be submitted to the qualified voters residing within the area proposed to be annexed in a special election called for that purpose by the municipality, and a majority of those voting at such election shall have voted in favor of the annexation. Any municipality may call such an election after being requested to do so through a petition signed by at least twenty-five percent of the resident property owners residing in the area requesting annexation and by the owners of at least twenty-five percent in value of the resident property within such area. The valuation of the property shall be determined as set forth in Subsection (A) above. The petition presented to the municipality shall contain an accurate description of the area proposed to be annexed. All elections called under the provisions of this subsection shall be conducted in the same manner as are other special elections called for bond and tax purposes by municipalities.
 * * * *
Subsection A begins with a stringent admonition which we emphasize, "No ordinance enlarging outboundaries of a municipality shall be valid unless . . ." the appropriate procedures for annexation are followed.
Subsection A provides for annexation under the following conditions:
 A. petition signed by:
 1. A majority of the registered voters
 2. A majority of the resident property owners
 3. Resident property owners who own twenty-five percent in value of the property.
 B. If there is no registered voter in the area, there is no need for 1 to be compiled with, and only 2 and 3 are necessary.
 If either of these two alternatives in A or B above is satisfied, an ordinance may be adopted enlarging the municipal boundaries.
Subsection C provides an additional method for annexation of an area into municipal limits which dispenses with compliance with the requirements of Subsection A of the statute. Thus, no petition is therefore necessary. This method has commonly been known as "election and ordinance". However, it is only available where the property to be annexed and the municipality share a boundary that is ninety percent in common, i.e., where the municipality virtually encircles the property to be annexed. This method requires that the registered voters of the area must approve the annexation. But if no registered voter resides in the area there need not be an election and the municipality can annex at its discretion.
Finally, Subsection D provides additional methods for the annexation of area contiguous to the municipality. The first is an election initiated by the municipal governing authority at which a majority of the registered voters of the area to be annexed approve the annexation. The second is by a petition of registered voters and resident property owners, followed by an election at which a majority of the registered voters of the area approve.
The aforementioned methods for the enlargement of municipal boundaries, or annexation, are the exclusive legally authorized methods. Therefore, we are compelled to apply the Legislature's caveat that commences the Section 175 that permits annexation by municipalities and we are constrained to conclude that any ordinance that seeks to enlarge a municipality's boundaries that is not adopted pursuant to a method expressly provided for by the statute is invalid. Perhaps the law should provide a method that permits annexation of property that has no resident property owners and no registered voters, in addition to the situation with a ninety percent common boundary, but that is a matter for legislative wisdom and discretion. Where an area is devoid of registered voters and resident property owners, unless it shares a ninety percent common boundary with the municipality, it is not susceptible to a valid annexation. (Compare: R.S. 33:172.2 applicable solely to the City of Westlake which permits the annexation of an area if there are no registered voters therein, upon a petition by ". . . the owners of a majority of the acreage. . ." Emphasis supplied). This notably mentions only "owners" and not "resident property owners" as does Section 172.
In conclusion, the opinion dated September 6, 1973, printed at pp. 138-139, "Report and Opinions of the Attorney General of Louisiana, January 1, 1972 to January 1, 1974", and Opinion 01-191, dated May 18, 2001, are hereby recalled. Unless an area, which has neither registered voters nor resident property owners, has a boundary that is ninety percent in common with the municipality's boundary, the area may not be legally annexed into a municipality.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ____________________________________ KENNETH C. DEJEAN GENERAL COUNSEL
KCD:ams